EDGAR T. BRACKETT, as Administrator, etc., Appellant, *v.* CHESTER GRISWOLD, Respondent.

Where an action had been repeatedly tried, and upon the last trial was retried on the same evidence given on the previous trials, which was read from the former records, and there appeared no probability that the case could be changed in any material aspect on another trial, *held,* that the General Term, on reversal of a judgment in plaintiff's favor, had power to dismiss the complaint.

(Argued June 23, 1891; decided October 6, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made February 4, 1891, which reversed a judgment in favor of plaintiff entered upon a verdict, and dismissed the complaint on the merits.

This action was brought by plaintiff, as administrator of Samuel Bonnell, deceased, against defendant, who was one of the directors of the Iron Mountain Company of Lake Champlain, to recover the amount of certain notes purchased by said intestate on the ground of an alleged fraudulent conspiracy on the part of said directors, whereby the public, by means of false representations as to the financial condition of said corporation, were induced to purchase its securities.

The following is the opinion in full:

"The third count in the complaint, upon which alone the case was submitted to the jury, alleges a conspiracy between the original defendants in the action, including the defendant Chester Griswold, to organize a sham corporation, the Iron Mountain Company of Lake Champlain, with a nominal capital of $2,000,000, to defraud the public who might deal with it and give it credit, and that in pursuance of the conspiracy they, among other things, falsely represented that the stock had been fully paid in, and resorted to other fraudulent devices specifically set forth in the complaint to give credit to the company, and that the plaintiff's intestate, relying upon and being deceived by the false representations and pretenses of the defendants, purchased the notes, believing the company to be solvent and responsible, whereas it was at all times insolvent and had no property available for the payment of its debts.

" On the fifth trial of the action, a verdict was rendered for the plaintiff on the third count, which was subsequently reversed by this court (112 N. Y. 454), on the ground that assuming the existence of the conspiracy alleged, and that the defendant Chester Griswold was a party to it, yet as the plaintiff's intestate had no knowledge of and did not rely upon any acts or representions of the alleged conspirators in purchasing the notes of the company, he was not defrauded thereby and the action could not be maintained. Pursuant to the order of the court, the case went back for a new trial. The court, on the next trial, again submitted the case to the jury on a view not taken on any former trial, viz.: that if the jury should find that Ellis, the treasurer of the company, was a co-conspirator with the persons originally named as conspirators, his representations made to Tuthill, the agent of Bonnell (plaintiff's intestate), and reported to him, on the strength of which Bonnell purchased the notes, that " the company was fully responsible ; that the notes were good and would be promptly paid at maturity," was in law the representations of all the conspirators, and that the defendant Chester Griswold was responsible therefor to the same extent as if it had been made by him personally. The jury upon this new view of the case found again for the plaintiff. Their verdict has substantially

established two facts, *first*, the original conspiracy as alleged, and *second*, that Ellis was a co-conspirator and in aid of the conspiracy made the false representations to Tuthill; that the company was solvent and responsible.

" The General Term reversed the judgment entered on the verdict on the ground that there was no evidence authorizing the submission to the jury of the question whether Ellis was a co-conspirator in the scheme alleged in the complaint, and that there was no ground upon which the defendant could be held bound by the representations made by Ellis to Tuthill. We concur with the opinion of the General Term.

" The conclusion of the jury that the defendant Chester Griswold was a party to any conspiracy to defraud the public through the organization of the Iron Mountain Company, is to say the least, founded upon vague and unsatisfactory evidence. But assuming that upon the evidence this was a question for the jury, we think the evidence was wholly insufficient to justify a finding that Ellis was a party to the conspiracy, and it is only on the assumption of this fact that there can be any pretence that his declarations to Tuthill were admissible against the defendant.

" In our opinion on the former appeal, the admissibility of the declarations of Ellis were considered, and we then said : ' It is undoubtedly true that Bonnell took the notes on the assurance of the ' Birmingham Iron Foundry ' and of Ellis, the treasurer of the ' Iron Mountain Company,' that the company was good and that the notes would be promptly paid at maturity. But neither was the ' Birmingham Iron Foundry ' nor Ellis, the agent of the defendant, nor were they authorized by him to make any representations to Bonnell, and the statements did not bind him, nor was he responsible for them.'

" It is true that the claim that Ellis was a co-conspirator had not at that time been made. That theory was first advanced when the case went back for the fifth trial. The only ground for the suggestion that Ellis was a co-conspirator arises from the fact that he was treasurer of the company, and that when he represented to Bonnell's agent that the company was good, he had executed as treasurer, pursuant to the direction of the board of directors, corporate bonds to the amount of $400,000,

and that certain drafts drawn at the works had gone to protest. There is no evidence whatever that Ellis supposed the company to be in fact insolvent when the representation was made, or that his representation was not made in the full belief of its truth.    Ellis, when he was appointed treasurer, was cashier of a bank in New York city, where the financial business of the company was to be carried on.    His salary was fixed at $1,000 a year.    He was neither a director nor stockholder in the company, and so far as appears, he had no knowledge of any of the alleged fraudulent purposes or acts of the promoters of the company.    They were well-known men, of large wealth and business experience, and of high standing in the community.

"The issue of bonds by a corporation in the initiation of its business was not inconsistent with solvency, and the reason why some of the drafts of the company went to protest does not distinctly appear.    The agent who drew them testified : ' I was requested to draw at so long a time, and so I account for it.'    The want of funds in the early months of the enterprise, before the development of the mines had proceeded to any extent, was not a very significant fact, and the treasurer might well have supposed that it indicated no permanent embarrassment.    The representation made by Ellis to Tuthill was not made to secure present credit for the company.    The notes had already been given and accepted by ' The Birmingham Iron Foundry,' the original creditor, and the inquiry made of the treasurer was by a party contemplating taking them upon a dealing between him and the holder of the notes.    The facts disclosed are consistent with the good faith of Ellis, and in the most favorable view for the plaintiff, they afford only a suspicion of fraudulent intention on his part in making the representation claimed.    So far as appears, he had no personal interest to subserve.    Upon the evidence, the finding that Ellis was acting in concert with other parties in the scheme to create a fraudulent corporation cannot be sustained.    His declarations, therefore, to Tuthill, not made in pursuance of any duty or authority as treasurer, and not previously authorized or subsequently sanctioned by the defendant, were inadmissible.    This conclusion removes the only prop upon which

the verdict rested, and we think the judgment founded thereon was properly reversed.

"The General Term in connection with the reversal dismissed the complaint on the merits. It is claimed that it was erroneous for the General Term to render final judgment against the plaintiff and that it should have ordered a new trial. We think the General Term had power under the circumstances to make the order. (Code Civ. Pro. § 1317.) It is extremely improbable that the case can be changed in any material aspect on a new trial. The case was retried on the last trial on the same evidence given on the previous trials, the evidence being read from the former records. Bonnell and Ellis are both dead. The action was commenced in 1873. Six trials have been had and every phase of the controversy has been explored with the utmost diligence by the counsel for the parties. They have substantially conceded by the course of the later trials, that all the pertinent evidence available has been procured. We do not say that no wrong was committed by the promoters of the Iron Mountain Company. But the facts bearing upon the defendant's connection therewith, and the circumstances under which Bonnell took the notes, which caused his loss, as presented by the record, constitute no cause of action, we think, against the present defendant. If there are any reasons why the plaintiff should have another trial, they can be presented to the Supreme Court on an application to modify its order, that being the proper tribunal to consider and determine such an application. (See *Baker* v. *Lever*, 5 Hun, 114; Affirmed, 67 N. Y. 304; *King* v. *Barnes*, 109 id. 267.)

"The judgment should be affirmed."

*Richard L. Hand* for appellant.

*William C. Holbrook* for respondent.

ANDREWS, J., reads for affirmance.
All concur.
Judgment affirmed.