ELIAS C. BENEDICT et al., as Executors of EDWIN BOOTH, Deceased, Appellants, v. GEORGE T. ARNOUX, Defendant, and JOSEPH CAMPBELL, as Executor, and EMMA CAMPBELL and MARTHA CAMPBELL, as Executrices of WILLIAM CAMPBELL, Deceased, and HANNAH CAMPBELL, Respondents, Impleaded with Others.

1. APPEAL — REVERSAL BY APPELLATE DIVISION ON FACTS — REVIEW. The power of the Appellate Division to reverse upon the facts, after a trial by the court or a referee, is limited to cases in which the findings are unsupported by testimony, or are against the weight of evidence. Where the findings are in accordance with the conceded facts or the uncontroverted testimony, the Appellate Division is not authorized to reverse upon the facts; and, if it does, a question of law is presented which the Court of Appeals may properly review.

2. POWERS OF APPELLATE DIVISION — REVERSAL — NEW TRIAL — FINAL JUDGMENT. In exercising the power conferred upon it to reverse or affirm, wholly or partly, or to modify, the judgment appealed from, and to grant a new trial if necessary or proper (Code Civ. Pro. § 1317), and to grant to either party the judgment which the facts warrant (§ 1022), the Appellate Division, on reversing a judgment, must grant a new trial, and cannot properly render a final judgment for the appellant, unless the facts are conceded or undisputed, or are established by official record or found by the trial court, or it appears that no possible state of proof applicable to the issues will entitle the respondent to judgment. This rule applies to actions in equity as well as to actions at law.

3. PRINCIPAL AND AGENT — WHEN AGENT'S KNOWLEDGE NOT IMPUTABLE TO PRINCIPAL. When an agent forms the purpose of dealing with his principal's property for his own benefit and advantage, or for the benefit and advantage of other persons who are opposed in interest, the presumption that he has disclosed all the facts that have come to his knowledge does not prevail, and his knowledge is not imputable to his principal.

4. TESTAMENTARY POWER OF SALE — IMPROPER EXERCISE OF, BY EXECUTORS, PROMOTED BY AGENT OF ANOTHER, FOR HIS OWN BENEFIT — PRINCIPAL NOT CHARGEABLE WITH CONSTRUCTIVE KNOWLEDGE. If a power given by a will to the executors is that of sale and does not include a power to mortgage, and an agent, holding, in his own right, a judgment against the estate, which he is interested in having paid, and having in his hands money of his principal for investment, arranges with the executors that they shall deed land of the estate to a third party, for the purpose of having it mortgaged by the grantee to the principal, and thus obtain the principal's money and turn it over to the executors for the benefit of the estate and of the agent, and the arrangement is carried out, the principal,

having no actual knowledge of the arrangement, is not constructively chargeable with the agent's knowledge, even if the arrangement constitutes a scheme to evade the will and renders the deed a mortgage; and the principal is not precluded thereby from enforcing the mortgage executed to him by the grantee of the executors' deed, where the latter instrument, as recorded, is upon its face an absolute deed, for a full consideration, and apparently within the power conferred by the will.

*Benedict* v. *Arnoux*, 7 App. Div. 1, reversed.

(Argued December 10, 1897; decided January 11, 1898.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 24, 1896, reversing a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term, and awarding judgment absolute in favor of the defendants Campbell.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John E. Parsons* for appellants. The sale and conveyance to George T. Arnoux was deemed by the executors to be in the interest of the estate. It was absolute in terms, complied with the will, and came within the power which the will conferred upon the executors. (*M. L. Ins. Co.* v. *Woods*, 121 N. Y. 302; *Rose* v. *Hatch*, 125 N. Y. 427; *Harrington* v. *E. C. S. Bank*, 101 N. Y. 257; *In re Heroy*, 67 Hun, 13.) The use of the $16,500 in the payment of taxes, judgments against the estate for which the mortgaged property could be sold, and in the Ninety-eighth street houses, came within the authority which the will conferred upon the executors. (*Collison* v. *Lister*, 20 Beav. 356.) The judgment obtained by the Chemical Bank and assigned to W. H. Arnoux was entitled to priority in payment by the executors. For it the real estate could be sold in proceedings in the Surrogate's Court. (Code Civ. Pro. §§ 763, 1210; *Nichols* v. *Chapman*, 9 Wend. 452; *In re Dunn*, 5 Redf. 27; *In re Clark*, 5 Dem. 377.) The sale having been made under a valid power to sell, the title of the purchaser and of his mortgagee can only be impeached by showing one of two things: (1) That a sum of

money was not actually paid by the purchaser; (2) that it was not paid by him in good faith. (1 R. S. 730, § 66; *Field* v. *Schiefflin,* 7 Johns. Ch. 150; *Kirsch* v. *Tozier,* 143 N. Y. 395.) The transaction is to be upheld on the assumption of the respondents, *i. e.,* that it was a mortgage and not a sale. A power to sell may include a power to mortgage. (Sugden on Powers [8th ed.], 425; 2 Kent's Com. [11th ed.] 345, 381; Lewin on Trusts, 426; 2 Perry on Trusts [3d ed.], 414, § 768; Redf. on Wills, 549; *Brown* v. *F. L. & T. Co.,* 51 Hun, 386; 117 N. Y. 266; *A. F. Ins. Co.* v. *Bay,* 4 N. Y. 19; *Williams* v. *Woodard,* 2 Wend. 492; *Bloomer* v. *Waldron,* 3 Hill, 361; *Waldron* v. *McComb,* 1 Hill, 111; *Rogers* v. *Rogers,* 111 N. Y. 228; *Ball* v. *Harris,* 4 M. & C. 264; *In re Jones,* 59 L. J. Ch. 31; *Metcalf* v. *Hutchinson,* L. R. [1 Ch. Div.] 594; *Lobenthal* v. *Raleigh,* 36 N. J. Eq. 172.)

*Henry B. Johnson* for respondents. The deed and conveyance to George T. Arnoux, and the transaction upon it, was not a valid exercise of the power of sale conferred by this will. (*In re Heroy,* 67 Hun, 13; *Russell* v. *Russell,* 36 N. Y. 581; *Scholle* v. *Scholle,* 113 N. Y. 261.) The proceeds of this transaction were not used for the benefit of the estate. (*Loring* v. *Brodie,* 134 Mass. 453; *Adair* v. *Brimmer,* 74 N. Y. 539; *Deobold* v. *Oppermann,* 111 N. Y. 531.) Booth, plaintiffs' testator, was not a *bona fide* holder of the mortgage for value and without notice, and plaintiffs cannot take advantage of the provision of the statute, 1 R. S. 730, § 66. (*Griffith* v. *Griffith,* Hoff. Ch. 153; *Westervelt* v. *Hall,* 2 Sandf. Ch. 98; *Bank for Savings* v. *Frank,* 56 How. Pr. 403; *Slattery* v. *Schwannecke,* 118 N. Y. 543; *Champlin* v. *Haight,* 10 Paige, 274; *Moore* v. *A. L. & T. Co.,* 115 N. Y. 65.) The transaction was a mortgaging of the estate's property and not a sale. (*Allen* v. *De Witt,* 3 N. Y. 276.) A power of sale gives executors no power to mortgage. (*Bloomer* v. *Waldron,* 3 Hill, 361; *A. F. Ins. Co.* v. *Bay,* 4 N. Y. 9; 2 Perry on Trusts, §§ 511, 768; 1 De G., M. & G. 645; 16 Beav. 400; 83 Va. 386.)

HAIGHT, J.   This action was brought to foreclose a mortgage for $16,500 on property known as No. 64 South Fifth avenue in the city of New York, made by the defendant George T. Arnoux to the late Edwin Booth.   The trial court found as facts that the plaintiffs, as executors of the last will and testament of Edwin Booth, deceased, were the owners of the bond and mortgage mentioned in the complaint; that default has been made in the payment of the interest due thereon, and that the whole sum secured by the mortgage by reason thereof has become due and payable.   He also found as facts that George T. Arnoux, the mortgagor, was the purchaser of the premises from the executors of William Campbell, deceased, who sold and conveyed the same to him under and pursuant to a power of sale contained in the last will and testament of the said Campbell, and such sale was made by said executors pursuant to said power for a lawful purpose, without fraud, and for the intended benefit of said estate and with full knowledge by said executors, and each of them, that the sale to said George T. Arnoux was made, and they intended it to be made, as an out and out sale for the benefit of said estate of said Campbell; that the plaintiffs' testator, Edwin Booth, had, in his lifetime, and in or about the month of January, 1891, deposited with the firm of Arnoux, Ritch & Woodford, attorneys at law, in the city of New York, the sum of $16,500, to be invested for him on bond and mortgage, and George T. Arnoux, the mortgagor mentioned in the complaint herein, borrowed said sum to enable him to pay the executors of the said Campbell that much of the purchase money on the said premises, and the mortgage aforesaid was given as collateral security to the bond of said George T. Arnoux for the loan made by said Edwin Booth as aforesaid; that in the whole of the transactions aforesaid there was no fraud or deceit practiced by the said Arnoux, Ritch & Woodford, or any one connected with that firm, on the executors of the last will and testament of the said Campbell; but said executors acted advisedly and with full knowledge and upon their own judgment in making the

sale to said George T. Arnoux, and with full knowledge that the said George T. Arnoux borrowed part of the purchase money to pay for the premises from said Booth, and that the mortgage involved in this action was given to secure the amount so borrowed. The court concluded by directing the usual judgment of foreclosure and sale.

There is conflict in the testimony with reference to the details of the transactions of the parties, but the following facts in the case are without substantial dispute. William Campbell died on the 27th day of April, 1888, leaving a last will and testament, which has been duly admitted to probate, by which the defendants Joseph Campbell, Emma Campbell and Martha Campbell were appointed executor and executrices, all of whom have duly qualified and received letters testamentary. The testator left him surviving Sarah Campbell, his widow, and seven children, three of whom are the executors. At the time of his decease, he was seized and in possession of the real property in suit, and the adjoining property thereto, known as No. 62 South Fifth avenue, the two places being worth about $30,000 each. He left no personal estate of any substantial value. The testator, in his will, after making some specific bequests, devised to his executors all the rest, residue and remainder of his estate, in trust, however, during the natural life of the testator's wife, with remainders of one-seventh to each child, except one in which a further trust was created for her benefit during life. By the tenth clause he provided that " if at any time my executors, or such of them as shall have qualified, the survivors or survivor of them, shall deem it for the best interests of my said estate that any part or parts, or all of my real estate, should be sold, then I authorize and empower my executors, as such, and the survivors and survivor of them; to sell and dispose of any real estate of which I may die seized or interested in and any part or parts thereof, upon such terms and in such manner as they shall deem best, and for that purpose to make, execute and acknowledge all necessary deeds of conveyance therefor." It further appears that, at

the time of the testator's death, his son, James Campbell, was engaged in business with the testator's son-in-law, John D. Phyfe, under the name of Phyfe & Campbell, in the construction of buildings upon lots known in this case as the 98th street property; that the testator in his lifetime had made loans to and had indorsed paper for Phyfe & Campbell, and, upon his decease, there were outstanding claims which were presented against his estate amounting to the sum of $40,000, to offset which he held claims against Phyfe & Campbell to the extent of $45,000. On one of these claims a judgment had been entered in favor of the Chemical National Bank for twelve thousand odd dollars. This judgment was entered upon paper drawn by Phyfe & Campbell, indorsed by the testator, and guaranteed by William H. Arnoux. Action was brought in the lifetime of the testator, but judgment was not entered until after his decease. The bank was then paid its claim by Arnoux, the guarantor, who took an assignment of the judgment. Proceedings were then instituted by Arnoux in the Surrogate's Court for the sale of the real estate of the testator for the payment of his debts, and pending these proceedings the arrangement was made between the parties, which has become the subject of this controversy. It does not clearly appear who originated the plan, but the first conversation took place between Phyfe and William H. Arnoux. Phyfe was anxious to get money with which to complete the unfinished houses on the 98th street property. He inquired of Arnoux if the executors could mortgage the testator's real property. Arnoux, upon an examination of the will, advised that the power to mortgage was not given, but that they had the power to sell. After this conversation Arnoux wrote Joseph Campbell, saying: "Mr. Phyfe has made me a proposition which if you join in I will carry out, and I believe it will relieve your property from the lien of my judgment." Subsequently the executors met Arnoux at his office and the arrangement that appears there to have been made was that the executors should sell the property, known as No. 64 South Fifth avenue, to

George T. Arnoux, a brother of William H. Arnoux, for the sum of $30,000; that William H. Arnoux, as the agent of Booth, who had money in his hands for investment, should make a loan upon the property for the sum of $16,500, and that this money should be used for the completion of the buildings upon the 98th street property. Accordingly, the executors deeded to George T. Arnoux and he gave back to them a mortgage for the sum of $13,500, which, together with the money derived from the loan obtained from Booth, made up the $30,000, the purchase price of the lot. Up to this time the title to the 98th street property had been in Mrs. Phyfe. William H. Arnoux loaned her the sum of $300 and thereupon she deeded the property to him with the understanding that it was to secure the repayment of such loan as well as the Chemical National Bank judgment, which had been assigned to him. The $16,500 derived from Booth was used in part for the payment of taxes and liens upon the property, and the balance placed in the hands of William H. Arnoux, with the understanding that he should pay therefrom the bills for the completion of the buildings upon the property when approved by Joseph Campbell if they exceeded $100 in amount.

The Appellate Division in its opinion appears to have reached the conclusion that Arnoux having the legal title to the 98th street property derived all the benefit from the expenditure of the money obtained from Booth in the completion of the buildings upon the property. They say: " We fail to find any testimony tending to show that any agreement existed, either verbal or written, by which, as between Arnoux and the estate, the estate could enforce any obligation of Arnoux to hold this property as security for the payment of this judgment, or as security for the repayment to the estate of the amount which the estate had paid to Arnoux to be used in the completion of these buildings. Arnoux did not agree to repay to the estate that sum of money, the proceeds of this mortgage. The proceeds were largely in excess of the sum due to Arnoux on this judgment, the amount of the judg-

91

ment being slightly over $12,000, while the amount which was paid to Arnoux of the money of the estate was in the neighborhood of $16,500. Nor was there any evidence of any agreement by Arnoux or any one else by which this 98th street property could be held as security for the payment of any debt of Phyfe & Campbell, or of this estate, or that upon the completion of the 98th street houses they would be sold and the proceeds applied in any way to the benefit of the estate, except so far as this verbal agreement before mentioned, if carried out, would relieve the estate from the payment of Arnoux's judgment." It appears to us that the learned Appellate Division have misapprehended the conceded facts in this particular. The transaction itself speaks louder than words. Some of the children had before expressed some lack of confidence in Phyfe. The money was not, therefore, turned over to him so that he could proceed and complete the buildings and pay therefor out of the money procured from the estate, but it was left in the hands of Arnoux, who was to pay the bills only when approved by Joseph Campbell, one of the executors. The title was not left in Mrs. Phyfe, so that on the completion of the buildings she could sell the property and pocket the proceeds, but it was conveyed to Arnoux in whom all of the parties appeared to have had confidence. Emma Campbell, one of the executrices, distinctly testifies that the transaction was that the 98th street property was to be improved and completed and that then through its sale the indebtedness of Phyfe & Campbell was to be paid and thereby the indebtedness of her father's estate relieved; that the purpose of raising the money upon the South Fifth avenue property was for the purpose of completing the houses in 98th street so that they could be sold and the indebtedness to the estate liquidated. She also tells us of the arrangement that was made for the leaving of the money in Arnoux's hands for the purpose of paying the bills upon the 98th street property. These facts are too suggestive. Arnoux could not appropriate this property to his own use. True, he might hold it for the repayment of the $300 loaned by him and for the $12,000

judgment of the Chemical National Bank which he had been compelled to pay, but beyond that he must be deemed to hold the property in trust for the payment of the claims of Phyfe & Campbell, for which the estate was also liable. It appears that at the time of the transaction in question the 98th street property was incumbered to the amount of $29,500 ; that fore-closure proceedings had been instituted and were pending at the time that Arnoux took title to the property. The sale provided for in that judgment was adjourned from time to time, but finally took place in 1892, at which time the premises were struck off to one Simon Arndt for $29,500, and his bid was assigned to Martha Campbell, one of the executrices, to whom the referee's deed was given, and who, under the facts, must be deemed to have taken the title for the benefit of the estate. This deed appears to have passed through the office of Arnoux, Ritch & Woodford, and the inference is permissible that the transfer to Martha Campbell was with the knowledge and approval of Arnoux, if not by his procurement. The subsequent history of the property is not disclosed by the record. Whether the transaction was wise and resulted beneficially to the estate does not finally appear. Phyfe valued the property at $70,000. An appraiser engaged by Arnoux valued it at $65,000. If the executrix, who now holds the title, succeeds in selling the property for its appraised value, $35,000 or $40,000 in excess of the bid upon the foreclosure sale will be derived, out of which the claims for which the estate is liable can be paid and the indebtedness of Phyfe & Campbell to the estate largely reduced.

The Appellate Division reversed the judgment, both upon the law and the facts, and directed final judgment for the defendants. It does not appear from the record that that court assumed to make any findings of fact; but it does appear from the opinion filed that the conclusion was reached that the deed from the executors to George T. Arnoux was intended and understood to be a mortgage.

It is now contended that the case comes before this court with all the issues of fact raised by the pleadings found in

favor of the defendants, and that the sole question left for the determination of this court is, whether, upon the facts so found, the determination of the Appellate Division is erroneous. We cannot assent to this proposition. The power of the Appellate Division to reverse upon the facts is limited to cases in which the findings of the trial court are unsupported by testimony, or are made against the weight of evidence. Where the findings of the trial court are in accordance with the conceded facts or the uncontroverted testimony, the Appellate Division is not authorized to reverse upon the facts; and, if it does, a question of law is presented which this court may properly review. (*Otten* v. *Manhattan R. Co.*, 150 N. Y. 395–400.)

The Appellate Division may reverse or affirm wholly or partly, or may modify the judgment appealed from, and may, if necessary or proper, grant a new trial. (Code C. P. sec. 1317.) But we think in this case the Appellate Division had no power to order final judgment; that in case it saw fit to reverse, its duty was to order a new trial.

The deed was absolute in form, and it could only be found to be a mortgage where such was intended to be its force and effect. This intention had to be determined from the oral testimony of the witnesses. Evidence was given tending to show that it was the understanding of the parties that after the money had been obtained from Booth the premises were to be redeeded to the executors; but this evidence was sharply controverted, and the trial court found for the plaintiffs upon this issue, and it cannot now be said that other evidence may not be found which will sustain the plaintiffs' contention in the event of a new trial.

It is one of the fundamental principles of our law that questions of fact are to be tried and determined in a court of original jurisdiction, and it is not the appropriate function of an appellate court to determine controverted questions of fact and render final judgment upon such determination. It is only in cases where the facts are conceded or undisputed, or are established by official record or found by the trial court, that

such a court is justified in awarding final judgment. This subject was considered in the case of *Edmonston* v. *McLoud* (16 N. Y. 543), in which it was held that, when a verdict or the report of a referee for the plaintiff is set aside upon a case, and it appears that no possible state of proof applicable to the issues will entitle him to judgment, the appellate court may render final judgment for the defendant. This rule has been followed in analogous cases, such as *King* v. *Barnes* (109 N. Y. 267–282); *Brackett* v. *Griswold* (128 N. Y. 644–648); *Fischer* v. *Blank* (138 N. Y. 669).

In the case of *Griffin* v. *Marquardt* (17 N. Y. 28) it was held that the Supreme Court is bound to grant a new trial on reversing a judgment, unless the case be within the exception stated in *Edmonston* v. *McLoud* (*supra*), and that a refusal to do so was an error of law reviewable in this court.

In the case of *Schenck* v. *Dart* (22 N. Y. 420) COMSTOCK, Ch. J., says: "Under the former system of procedure, where a judgment in an action at law was reversed upon writ of error, a *venire de novo*, or new trial, was always granted. In equity causes, on the other hand, the appellate court, if it reversed the decree appealed from, proceeded to make a new and complete adjudication, such as the pleadings and proofs in the cause warranted and required. According to the new code of practice, actions at law and suits in equity are no longer distinguishable as such; and the question has several times arisen as to the power and duty of an inferior appellate court where the judgment reviewed is reversed. We have followed the analogy of the practice in legal actions, and have determined that, in such cases, a new trial must be granted, unless indeed it is apparent, in the very nature of the case, that the party against whom the reversal is pronounced can never succeed in the action."

In the case of *Cuff* v. *Dorland* (57 N. Y. 560–564) REYNOLDS, C., says: "Upon the appeal from the judgment dismissing the plaintiff's complaint, the General Term of the Supreme Court had power to reverse, affirm or modify the judgment appealed from, * * *. That court did reverse the judgment appealed from and then rendered a final judgment in

favor of the plaintiff, who had been defeated below, for such
sum as from an examination of the evidence it was thought
he should have recovered at the Special Term. This the Gen-
eral Term had no power to do. They had power to order
final judgment when the facts were agreed to by the parties
or found by the court or a jury on the trial. (*Purchase* v.
*Matteson*, 25 N. Y. 211.) The assumption of authority in
this case would not be more apparent, if the General Term had
in the first instance, ignoring the Special Term altogether,
undertaken to try the issue, hear the evidence and render
judgment as a court of original jurisdiction."

In the case of *Whitehead* v. *Kennedy* (69 N. Y. 462–468)
ANDREWS, J., says: "The Code authorizes the Appellate
Court upon an appeal from a judgment or order to reverse,
affirm or modify the judgment or order appealed from in
the respect mentioned in the notice of appeal or to order a
new trial. This power must be construed in view of the
character and function of an appellate court, and of the funda-
mental principle, that questions of fact are to be investigated
and determined in the court of original jurisdiction. It is not
the appropriate function of an appellate court to determine
controverted questions of fact, and render final judgment upon
such determination. This would be substituting another tri-
bunal from that known to the Constitution and the laws for
the trial of causes."

In the case of *Guernsey* v. *Miller* (80 N. Y. 181) DAN-
FORTH, J., says: "The General Term erred in directing judg-
ment in favor of Van Kleeck. It cannot be said that upon a
new trial the case would remain unaltered. The facts are not
undisputed, and as it does not appear that the respondent is
entitled to judgment in his favor, as matter of law, the issues
made by the respective parties should have been sent back to
the trial court for its determination. (*Astor* v. *L'Amoreux*,
8 N. Y. 107.) It is not sufficient that it is improbable that
the defeated party can succeed upon the new trial; it must
appear that he certainly cannot, to justify an appellate court
in rendering a final judgment against him." (See, also,

*Thomas* v. *N. Y. Life Ins. Co.*, 99 N. Y. 250; *Parsons* v. *City Bank*, 57 N. Y. 637; *Hall* v. *Erwin*, 57 N. Y. 643; *Andrews* v. *N. J. S. Co.*, 11 Hun, 490–495; *Price* v. *Price*, 33 Hun, 432.) The recent amendment of section 1022 of the Code of Civil Procedure has not, in our judgment, changed the practice in this particular. The provision that "the Appellate Division shall review all questions of fact and of law, and may either modify or affirm the judgment or order appealed from, award a new trial or grant to either party the judgment which the facts warrant," should be considered in connection with section 1317 and construed in harmony therewith. The court may grant the judgment which the facts warrant. This has reference to facts conceded, uncontroverted, established by records or found by the trial court. It was never intended to include controverted facts upon which issue had been joined and on which parties were entitled to a trial by a jury. We are aware that this is an action in equity, but actions at law and in equity under the Code are no longer distinguishable as such, and the practice on review in such actions is the same. This question was settled in the case of *Schenck* v. *Dart*, to which reference has been made, and since that decision has been the settled doctrine of this court.

Our understanding of the facts is not fully in accord with the views of the Appellate Division, but, in disposing of this case, we have no power to review controverted facts. Our view of the practice, to which attention has been called, would require a modification of the judgment so as to order a new trial in case the judgment was properly reversed. But we are inclined to the view that the judgment ought not to have been reversed, even though it should now be found that the facts are in accordance with the expressed views of the Appellate Division. We shall, therefore, assume, for the purposes of this case but without so deciding, that the power given by the will was that of a sale for the benefit of the estate, and did not include a power to mortgage. We further assume, in accordance with the views of the Appellate Division, that the arrangement made between Arnoux and the executors of the estate to deed to

Arnoux's brother, who was to mortgage the property and return the money to the executors, was, in effect, a scheme to evade the provisions of the will, and constituted the deed a mortgage. We thus find the executors, possessed of all the facts, entering into an arrangement with Arnoux, as the agent of Booth, to obtain a loan of money from him, out of which they hoped to derive a benefit for the estate. We find Arnoux, also possessed of all the facts, holding a judgment against the estate for upwards of $12,000, which he is desirous and interested in having paid, agreeing with the executors to make a loan of his principal's money upon this paper, hoping and expecting thereby to secure the payment of his own claim. It affirmatively appears in the case that Booth knew nothing of the transaction. It is claimed, however, that the knowledge of his agent is imputable to him. This is true to a limited extent ; so long as the agent acts within the scope of his employment in good faith, for the interest of his principal, he is presumed to have disclosed to his principal all the facts that come to his knowledge as agent ; but just as soon as the agent forms the purpose of dealing with his principal's property for his own benefit and advantage, or for the benefit and advantage of other persons who are opposed in interest, he ceases, in fact, to be an agent acting in good faith for the interest of his principal, and his action thereafter based upon such purpose is deemed to be in fraud of the rights of his principal, and the presumption that he has disclosed all the facts that have come to his knowledge no longer prevails. The citation of authorities to sustain this proposition is hardly necessary, but it may not be out of place to call attention to the case of *Henry* v. *Allen* (151 N. Y. 1), in which this court has recently said : " The general rule that notice to the agent, while acting within the scope of his authority and in regard to a matter over which his authority extends, is notice to the principal, rests upon the duty of disclosure by the former to the latter of all the material facts coming to his knowledge with reference to the subject of his agency and upon the presumption that he has discharged that duty. (*Casco Nat.*

*Bank* v. *Clark*, 139 N. Y. 307, 313; *Hyatt* v. *Clark*, 118 N. Y. 563; *Case of the Distilled Spirits*, 11 Wall. 356, 367.) This presumption, however, does not always arise, for there are several exceptions well recognized by the authorities. Thus, when the agent has no legal right to disclose a fact to his principal, or he is engaged in a scheme to defraud his principal, the presumption does not prevail, because he cannot in reason be presumed to have disclosed that which it was his duty to keep secret, or that which would expose and defeat his fraudulent purpose. (*Innerarity* v. *Merchants' National Bank*, 139 Mass. 332; *S. C.*, 52 Am. Rep. 710; *Weisser* v. *Denison*, 10 N. Y. 68, 76; *Frenkel* v. *Hudson*, 82 Ala. 158; *Western M. & I. Co.* v. *Ganzer*, 63 Fed. Rep. 647; *Hudson* v. *Randolph*, 66 Fed. Rep. 216; *Kettlewell* v. *Watson*, L. R. [21 Ch. Div.] 707; *Cave* v. *Cave*, L. R. [15 Ch. Div.] 639; Mechem on Agency, § 721.)" Mr. Pomeroy says in his work on Equity Jurisprudence: "When an agent or attorney has in the course of his employment been guilty of an actual fraud, contrived and carried out for his own benefit, by which he intended to defraud, and did defraud, his own principal or client, as well as perhaps the other party, and the very perpetration of such fraud involved the necessity of his concealing the facts from his client, then, under such circumstances, the principal is not charged with constructive notice of facts known by the attorney, and thus fraudulently concealed." (§ 675.)

It is said that a person dealing with an executor or trustee must look to his authority or he will act at his peril. Very true, Booth was chargeable with constructive notice of all that appeared of record. Upon going to the will he would find that the executors were given the power of sale. Upon examining the record of the register's office he would find an absolute deed given to George T. Arnoux in consideration for $30,000, the conceded value of the property. The fact that the executors had executed this deed indicated that they had exercised their judgment and discretion called for by the power given in the will. There thus appeared from the

92

record a perfect title in George T. Arnoux, from which he might safely make the loan upon the mortgage. The oral arrangement made between his agent and the executors, in which they, under the view of the Appellate Division, devised a scheme to evade the provisions of the will, he knew nothing of, and inasmuch as they were acting for their own interests and advantage and in fraud of his rights, the law will not impute to him, under the circumstances, the information possessed by his agent.

The judgment of the Appellate Division should be reversed, and that entered upon the decision of the Special Term affirmed, with costs.

All concur, except O'BRIEN, J., not voting.

Judgment reversed, etc.