NORWEGIAN-AMERICAN SECURITIES CORPORATION, Plaintiff, *v.*
WILLIAM SCHENSTROM, Defendant.

Supreme Court, New York Special Term, December 23, 1924.

**Corporations — directors — action for rescission of sale to plaintiff corporation by defendant director of stock of another corporation — failure of defendant director to make transaction known to board of directors for more than year is violation of fiduciary relationship — corporation did not ratify sale by resolution nor by retention of dividends received upon stock purchased — action of plaintiff's president in purchase of stock did not impute to corporation knowledge of transaction — contract rescinded, and parties placed in statu quo.**

A sale to a corporation, by one of its directors, of the stock of another corporation, will be rescinded and set aside and the parties placed in *statu quo*, where it appears that the defendant failed to make the transaction known to his codirectors as a board for more than a year after the sale, though he was continuously present at the meetings of the board, and that defendant's conduct throughout the transaction was not consistent with his fiduciary relationship to the plaintiff corporation.

The adoption of a resolution, at defendant's behest, which had no reference to the sale and the retention of the dividends secured upon the stock does not warrant a finding of ratification on the part of the corporation.

The fact that the president of the corporation was intrusted with the purchase and sale of securities did not impute to the corporation knowledge of the transaction, since the sale was not the type of business in which the president's general grant of authority permitted him to engage.

ACTION for the rescission of a sale to the plaintiff by the defendant, one of its directors, of the stock of another corporation.

*Raymond Ballantine*, for the plaintiff.

*Shortall & Evans* [*Mark Eisner* of counsel], for the defendant.

Levy, J.:

Plaintiff corporation brought this action for the rescission of a sale to it by the defendant, one of its directors, of all certain stock of the Electric Welding Company of America, for which was paid the sum of $25,000, defendant's liability being predicated on a breach of his fiduciary relationship to the corporation. The facts, so far as material to the determination of the issue here involved, as ascertained from the proof, are these: From April 26, 1918, until the month of January, 1921, defendant was a director of the plaintiff corporation. While acting in that capacity he sold to the plaintiff through its president ·and its assistant secretary 250 shares of the preferred stock of the Electric Welding Company of *America*, together with 250 shares of its common stock, all owned by the defendant. Of the thirteen directors of the plaintiff, the president, Barth, and one Reith were the only two who had any intimate knowledge of the consummation of this transaction. The sale of stock in question to the corporation was never brought home to the directors either as a board or individually, and nowhere does it appear that the stockholders had any knowledge whatsoever at the time of the transaction in question. The defendant from August, 1918, until July, 1919, attended the meetings of the board of directors but on no occasion did he make known to any of them this sale to the corporation. This transaction was not disclosed at any of these meetings prior to July 28, 1919, when it was brought out through an audit of the plaintiff's books. From July 28, 1918 until October 13, 1919, there was no meeting of the board of directors of the plaintiff. On the latter date, however, at the directors' meeting held after the discovery of the transaction, a resolution was adopted disapproving the payment of the plaintiff's money for the defendant's stock, declaring it void and directing plaintiff's adjustment committee to return defendant's stock and obtain the plaintiff's money. A tender and demand was thereafter made but without success. The defendant contends that while he did not make known the transaction in question to any of the members of the board of directors except Barth and Reith or to the board at one of its meetings, that subsequent to the sale of the stock to the plaintiff· a resolution of the board of directors approved such sale in effect and this was tantamount to a ratification of the transaction, and that in any event the retention of the dividends which the plaintiff received from the stock in suit constituted such a ratification and thereby estopped plaintiff from maintaining this action to rescind. The former so-called ratification asserted by the defendant to have been made by the plaintiff board of directors consists of a resolution which was presented

to three of the plaintiff's directors who were hastily called together to adopt it, to the effect that said plaintiff was interested in a transaction as a stockholder of the Electric Welding Company of *Boston*. The proof shows that the defendant was engaged in some transaction in Boston with the Electric Welding Company of Boston, a corporation entirely separate from the Electric Welding Company of America. In connection with this transaction, the defendant required a surety company bond, and applied to the National Surety Company at its New York office which agreed to write the necessary bond provided he would furnish satisfactory indemnity. The defendant proposed that the plaintiff should execute an indemnity agreement but the representative of the surety company pointed out that the plaintiff company could not become an indemnitor or surety under its general powers unless it had an interest in the transaction covered by the bond. This representative suggested that a resolution should be drawn containing a recital to the effect that the plaintiff, the Norwegian-American Securities Corporation, was interested in the transaction as a stockholder of the Electric Welding Company of Boston. The testimony is uncontradicted; one of the exhibits, consisting of a partly printed, partly written resolution, shows that the resolution in question was formulated by the representative of the surety company in the latter's office, and that Mr. Thompson, the legal adviser of the plaintiff, was out of town. This resolution was thus prepared by the surety company and presented to the plaintiff's directors who were, as previously observed, hastily called together to adopt it, which they did. It contained in preamble form the suggestion of interest aforementioned. It appears that defendant engineered the entire proceedings for his own benefit. The record fails to show that the Norwegian-American Securities Corporation, this plaintiff, did at the time or any other time directly own any of the shares of stock of the Electric Welding Company of Boston. Defendant, however, seeks to support his position by drawing the following unfounded inference: He argues that the resolution correctly recited an interest as stockholder of the Electric Welding Company of Boston, notwithstanding plaintiff was not a stockholder of that company, as it had an interest indirectly. He claimed, but likewise with no foundation whatever, that as the Electric Welding Company of America held some of the stock of the Electric Welding Company of Boston, the plaintiff as a stockholder of the former was naturally enough interested in the latter and the recital was, therefore, perfectly accurate.

Apart from the fact that these inferences are far-fetched, there is in the record more than a complete explanation of the adoption

of the resolution in question, which shows conclusively that it was done without reference to or a consideration of the fact recited in the preamble, namely, the ownership of stock in the Electric Welding Company of Boston. There is nothing in the circumstances connected with this transaction on which to base a finding even remotely that the directors of the Norwegian-American Securities Corporation knew of its acquisition of the stock in suit at the time in question. Hence I find that there was no such ratification by the adoption of the resolution as is claimed.

Nor was there any ratification by virtue of the retention of the dividends received upon the stock in suit. ( *Keefuss* v. *Weilmunster*, 89 App. Div. 306; *Bloomquist* v. *Farson*, 222 N. Y. 375; *Weigel* v. *Cook*, 193 App. Div. 520.) Nothing more need be said on this point.

Further, the fact that Barth was a director, president and general manager of the plaintiff and intrusted with the purchase and sale of securities certainly did not impute to the plaintiff knowledge of the transaction, nor bind it. It was not the sort of business in which his general grant of authority permitted him to engage. The result might have been otherwise, if Barth had been dealing with a stranger free from all fiduciary obligations to the plaintiff and who dealt with plaintiff through him relying upon the latter's apparent authority. In the instant case, however, the defendant was in solemn fiduciary relationship with the plaintiff and he, therefore, could not validate his malfeasance by saying that it was consummated with Barth's knowledge. Furthermore, the knowledge of an agent is not imputable to the principal when the former engages in transactions for his own benefit or for the benefit of a third person whose interests are hostile to his principal. (*Benedict* v. *Arnoux*, 154 N. Y. 715; *Brooklyn Distilling Co.* v. *Standard Distilling etc., Co.*, 193 id. 551.) Nor would knowledge on the part of a majority of the directors or on the part of the holders of the majority of the stock validate or ratify the director's breach of trust. (*Pollitz* v. *Wabash R. R. Co.*, 207 N. Y. 113.) The conclusion thus reached presents the all-important question in the case: Did the defendant violate his fiduciary relations with the plaintiff in selling it his stock without making the transaction known to the board of directors, and could the sale for that reason be rescinded by the corporation? It has long been the rule in this jurisdiction that a director in dealing with the corporation in which he holds such office must act in an open, fair and honest manner. Defendant's attempt to sell the stock at first to one Thompson, a director of the corporation, and then his dealings with Barth, the president of the corporation, without making known the fact that the transaction was formerly rejected by Thompson,

his failure to make known to the board of directors for more than a year the sale of the stock, his attendance upon the meetings of such board during which he kept silent, are all indications of bad faith on his part.    I think it unnecessary to refer more specifically to the evidence in the case.    Suffice it to say that the transaction is not consistent with honest and fair dealing with the entity to which the defendant owed a high and strict duty.    Honesty and fair dealing required in cases of this nature are not found in covert dealing with a corporation through but one of its officers.    Continued presence at meetings of the board of directors without revealing what had transpired is not an indicia of that sort of fair dealing required of one occupying the position of this defendant. The rule has thus been stated by the Court of Appeals in the case of *Globe Woolen Co.* v. *Utica G. & E. Co.* (224 N. Y. 483): " A trustee may not cling to contracts thus won, unless their terms are fair and just.    *    *    *    His dealings with his beneficiary are ' viewed with jealousy by the courts, and may be set aside on slight grounds.' " (See, also, *Munson* v. *Syracuse, G. & C. R. R. Co.*, 103 N. Y. 58.) There the court, passing upon a similar proposition to that here involved, said: " It does not stop to inquire whether the contract or transaction was fair or unfair.    It stops the inquiry when the relation is disclosed, and sets aside the transaction or refuses to enforce it, at the instance of the party whom the fiduciary undertook to represent, without undertaking to deal with the question of abstract justice in the particular case."    And further: " The value of the rule of equity, to which we have adverted, lies to a great extent in its stubbornness and inflexibility.    Its rigidity gives it one of its chief uses as a preventive or discouraging influence, because it weakens the temptation to dishonesty or unfair dealing on the part of trustees, by vitiating, without attempt at discrimination, all transactions in which they assume the dual character of principal and representative."    (See, also, *Billings* v. *Shaw*, 209 N. Y. 265.)

The record abounds in testimony showing anything but proper conduct on the part of this defendant.    He owed a particular duty which he violated and the transaction which he sponsored was not characterized by fair and honest dealing.    In any event, his actions were not free of suspicion.    He violated his fiduciary relationship.

In view of the foregoing, the transaction should be rescinded and set aside and the parties put in *statu quo* with regard thereto as of the date of the sale of the stock.    Submit findings and decree in conformity with this decision.