TREE PLATEAU Co., INC., Respondent, v. MOUNT VERNON MILLS, INC., Appellant.

First Department, March 30, 1965.

*Samuel J. Murray* of counsel (*John K. Watson* and *Jon H. Hammer* with him on the brief); *McKenzie & Watson,* attorneys), for appellant.

*Robert G. Desmond* of counsel (*Hawkins, Delafield & Wood,* attorneys), for respondent.

*Per Curiam.* In the Summer of 1960, defendant sold certain cotton duck fabric to Hession Textile Company (hereinafter " Hession ") under written contracts. The fabric was to be invoiced when ready for delivery, and if delivery was not taken immediately, the fabric was to be held by defendant in its warehouse for the account of Hession until delivery was requested. Plaintiff, late in 1960 and early in 1961, purchased the fabric from Hession in the name of a division of plaintiff corporation — Doria Textile Company (hereinafter " Doria "). That purchase on behalf of plaintiff was effected by Michael Hession and Jack Kamen, who were the principal officers of Hession. Plaintiff paid Hession for the goods in February, 1961. In November, 1961, defendant purported to rescind the sale of the goods to Hession. In the meantime, plaintiff had contracted to sell the goods — which it had purchased from Hession — to Seaboard Textile, Inc. On December 4, 1961, plaintiff advised defendant of the sale to Seaboard and requested that defendant release the goods to that company. On December 6, 1961, defendant refused to do so. This action for replevin and conversion ensued. The Trial Justice found for the plaintiff.

There is no dispute as to the applicable principles of law in this case.* Under rule 1 of section 100 of the Personal Prop-

---

* Since this case was tried before September 27, 1964, when the Uniform Commercial Code became effective, references are to the Personal Property Law rather than to the Uniform Commercial Code which displaced the relevant sections of the Personal Property Law.

erty Law, title to the goods passed to Hession as of the invoice dates even though the goods were not delivered. However, the title obtained by Hession was a voidable one because of the provisions of sections 134, 135 and 142 of the Personal Property Law. Under subdivision 1 of section 134 an unpaid seller had a vendor's lien on the goods while in possession of them and a right to rescind the sale. Subdivision 1 of section 135 limited the vendor's lien, *inter alia,* to the situation where goods had been sold on credit and the terms of credit had expired. There is no question in this case that the amounts owed by Hession to defendant were long past due when Hession resold the goods to plaintiff.

Under subdivision 1 of section 142 an unpaid seller, having a right of lien, could rescind the transfer of title and resume property in the goods where, among other things, the right to do so was expressly reserved in case the buyer should default. Unquestionably, defendant reserved such a right, for the order forms incorporated by reference the "Worth Street Rules" which gave the seller the power upon eight days' notice by registered mail to cancel a sale and return the goods to stock if the buyer be in default over five days.

However, subdivision 2 of section 142 of the Personal Property Law provided that the transfer of title was not to be held to have been rescinded by an unpaid seller until the seller had manifested by notice to the buyer, or by some other overt act, an intention to rescind.

Reference should now be made to section 105 of the Personal Property Law which provided: "Where the seller of goods has a voidable title thereto, but his title has not been avoided at the time of the sale, the [subsequent] buyer acquires a good title to the goods, provided he buys them in good faith, for value, and without notice of the seller's defect of title".

That section must, however, be read in connection with section 143 which stated that an unpaid seller's right of lien was not affected by any sale or other disposition of the goods which the buyer may have made, unless the seller had assented thereto.

With these unquestioned principles of statutory law in mind, what concerns us is whether the Trial Justice correctly applied them to the facts of this case. Essentially, there were three controlling issues of fact: (1) Was title transferred to plaintiff by Hession before defendant manifested its intention to rescind? (2) Was plaintiff a bona fide purchaser for value? (3) Did defendant assent to the resale of the goods within the meaning of section 143 of the Personal Property Law, and thereby waive its vendor's lien?

590

The majority of this court concurs with the Trial Justice's findings in favor of plaintiff on all of these issues. The correctness of the ruling below that Hession's title was not attempted to be voided until November 22, 1961 — many months after Hession had resold the goods to plaintiff — is beyond cavil.

On the issue of whether plaintiff was a bona fide purchaser of the goods for value, the Trial Justice found that Michael Hession and Jack Kamen, as principals of Hession, did not disclose to plaintiff or its Doria division that the goods had not been paid for by Hession and were thus subject to a seller's lien on behalf of defendant. Since, at the time the goods were resold to plaintiff, Michael Hession and Jack Kamen were under contract with plaintiff to act as its purchase and sales agents, defendant contends that their knowledge must be attributable to plaintiff, and consequently plaintiff cannot be held to be a bona fide purchaser.

As a general rule a principal is chargeable with the knowledge or notice to the agent received while the agent is acting within the scope of his authority. (3 Am. Jur. 2d, Agency, § 273; 2 N. Y. Jur., Agency, § 259.) However, there are a number of exceptions to this presumption of imputed knowledge. In the Restatement of Agency 2d (§ 274, Comment d) one such exception is stated to arise "where the agent obtains property on his own account and subsequently, as a vendor, transfers it to his principal". The instant case falls within the scope of that exception.

Another exception to the rule that the knowledge of the agent is to be imputed to the principal arises in those cases where the conduct and dealings of the agent are such as to raise a clear presumption that he will not communicate the facts to the principal, and, on the contrary, warrant the inference that the agent will conceal or withhold the information. (*Brooklyn Distilling Co.* v. *Standard Distilling & Distr. Co.*, 193 N. Y. 551, 555; *Benedict* v. *Arnoux*, 154 N. Y. 715, 728; *Henry* v. *Allen*, 151 N. Y. 1, 9–11; *Hurley* v. *John Hancock Mut. Life Ins. Co.*, 247 App. Div. 547, 550–551; 3 Am. Jur. 2d, Agency, § 282; 2 N. Y. Jur., Agency, § 268; Ann. 104 A. L. R. 1246–1253.) Thus, whether viewed as falling within the exception concerning a transfer of property by an agent on his own account or the inference arising from a presumption that an agent will not communicate to his principal matters which the agent would necessarily conceal or withhold to cover his own fraud, the Trial Justice was justified in finding that the knowledge of the agents was not imputable to the plaintiff as their principal.

Finally, there remains the question as to whether the defendant assented to the resale of the goods within the meaning of section 143 of the Personal Property Law and waived its seller's lien in accordance with section 137 of the Personal Property Law. A seller's lien is destroyed if the seller agrees to hold the property as a bailee for a subpurchaser. (3 Williston, Sales [Rev. ed., 1948], § 509, p. 109.) In effect, the seller thus assents to the resale of the goods. We agree with the finding of the Trial Justice that defendant assented to the resale to Doria and waived its vendor's lien. Such assent and waiver were properly inferred from verifications of inventory lists in May and October, 1961, in which defendant verified that according to its records defendant was holding the merchandise for the account of Doria. The subsequent attempt in November, 1961, to characterize the October verification as " in error " still did not relieve defendant from its previous admission in May of its attornment to Doria.

Moreover, the shipment of part of the goods to plaintiff's customers was another indication of assent so as to deprive defendant of its vendor's lien. The record shows that part of the goods in question were sold by Doria and that defendant in May, 1961, complied with instructions to deliver such goods to Doria's customers. This delivery of part of the goods to a customer of the subpurchaser was compelling evidence of an assent by defendant that it was holding the goods as a bailee for plaintiff. (See 3 Williston, Sales [Rev. ed., 1948], § 509, p. 109.)

The dissenting opinion of Justice STEUER is based upon a contrary version of the weight of the evidence on the issues of fact involved in this case from that arrived at by the Trial Justice. In our opinion, the findings of the Trial Justice on these issues are fully supported by the testimony and the documentary evidence, and the proper inferences to be drawn therefrom. The judgment should therefore be affirmed, with costs and disbursements to plaintiff-respondent.

STEUER, J. (dissenting). I dissent upon the grounds that the weight of the evidence shows that defendant did not release its lien and that it did rescind the contract of sale.

The goods in question, consisting of duck fabric, were sold by defendant to Hession Textile Corporation (herein Hession) in the Summer of 1960. The goods were fabricated and invoices were sent to Hession. As to the portion of the goods in suit, Hession never called for delivery and never paid. Under the terms of the sale, defendant held the goods for Hession's

account. Until payment was made defendant had an unpaid seller's lien on the goods (Personal Property Law, § 134, subd. 1, par. [a]).

Plaintiff has a division known as Doria Textile Company. Plaintiff appointed Michael Hession and Jack Kamen (who were the principal officers of Hession) as its exclusive purchase and sales agents for Doria. As such agents, they bought these goods for Doria from Hession. In this transaction the only real persons involved were the individuals Hession and Kamen, who sold as representatives of Hession and bought as agents of Doria. The trial court found that these individuals never revealed to anyone connected with plaintiff or its Doria division that the goods were subject to an unpaid seller's lien. Generally speaking, the knowledge of an agent is not attributable to his principal in a transaction where the agent deals with the principal, either buying from or selling to him (*Benedict v. Arnoux*, 154 N. Y. 715). But this situation presents something more than that. While Doria, strictly speaking, was not a legal entity, it was treated by plaintiff, and perforce by the persons with whom it had any contact, as if it were. And Doria had no employees or anyone who spoke for it other than the two principals of Hession. If defendant had wished to inform anyone in Doria of its lien, it would have to give this information to these two. And this is so of any other information. It is submitted that when a corporation departmentalizes its business as this plaintiff did, and limits the knowledge that any department can have to certain individuals, the knowledge of those individuals must be the knowledge of that department and, hence, of the corporation itself, because in no other way can the department acquire information.

But in order to determine whether defendant has a lien, it is not necessary to reach this question. Defendant did not lose its lien by virtue of the sale made by Hession to Doria, whether or not plaintiff was an innocent purchaser for value (Personal Property Law, § 143). But the lien could be lost if defendant acknowledged the transfer (Personal Property Law, § 143). To establish such an acknowledgment plaintiff relies on an exchange of correspondence. On May 26, 1961, Hession wrote defendant stating that Hession's records indicate that defendant was holding the goods listed on the enclosed sheet "for our account and for the account of Doria Textile Company." Defendant was requested to sign and return the enclosed sheet if it was correct. Defendant did so. It is difficult to see how this can be construed as an acknowledgment of a sale. No particular goods were mentioned as being sold.

At best, the letter would convey the information that there was some undefined relationship between Hession and Doria which gave the latter some undefined interest in some part of the goods. A closer examination of the letter would confirm this. The letterhead is of the "Hession Textile Company." Beneath this is "Hession Textile Corp." and "Doria Textile Company." This would give the impression that these organizations were units of Hession. Six months later, in October, 1961, a letter was sent on Doria stationery with the same address as Hession's, stating that to confirm Doria's account, auditors wished to know whether defendant was holding the goods on the enclosed sheet for Doria. Defendant checked the quantities and returned the sheet acknowledged. One month later, defendant in a letter addressed to Doria advised that the acknowledgment was in error to the extent that the goods were held for Doria and that they were in fact being held for Hession.

It is not claimed that during this month there was any change of position in regard to these goods by plaintiff, Doria or Hession. Under the circumstances, if this be held to be an acknowledgment of the sale, it is not such an acknowledgment as under the statute would constitute a waiver of the lien. The waiver of an unpaid seller's lien is a matter of expressed intent; that is, it is lost only if the lienor, by words or by conduct inconsistent with retention of the lien, shows such an intent (*Capuano v. Italian Importing Co.*, 89 Misc. 449; 3 Williston, Sales [Rev. ed.], § 516). Agreeing to a sale by the owner or licence would be such conduct, and the statute merely codifies this particular instance of it. An inadvertent acknowledgment, corrected before any action was taken pursuant to it, would not constitute a waiver.

In addition, plaintiff urges that defendant waived its lien by allowing two small portions of the goods to be shipped. Examination of the facts refutes this contention. The goods were shipped only after a payment was made by Hession in excess of the contract price of the shipment. The payment was credited to the Hession account. Shipment was made on Hession's instructions. These instructions, as to one shipment, were to ship in Hession's name; as to the other, in Doria's. Complying with this latter instruction constituted no acknowledgment of any sale to plaintiff.

Permeating the evidence in this case is the ambiguous relationship of Doria in all dealings with defendant. Plaintiff's name never appears. And for all that does appear, Doria and Hession were identical. Not only did the same persons act for both, they were the only persons who acted for either. And the

stationery and offices certainly gave the impression that if Doria was anyone's subsidiary or department, that someone was Hession. Concededly, this impression was created by plaintiff. Under familiar principles, where one of two innocent parties must suffer from the delinquency of a third, the party to be charged is the one who allowed the delinquent party to take advantage of the situation.

So far the discussion has been of defendant's defensive position, its right to hold onto the goods until its lien is satisfied. The conclusion is that this right is not impaired. Defendant, however, asserts an affirmative right. It claims to have rescinded the contract of sale to Hession and to be, not a lienor, but the owner of the goods.

Defendant bases its claim on the Worth Street Rules, which were incorporated in the sales contract with Hession, and on the statute. The statutory right is to rescind where there is a lien and the buyer is in default for an unreasonable time, provided the seller has expressly reserved the right to do so (Personal Property Law, § 142). Concededly, this right was reserved in the contract. The Worth Street Rules give the unpaid seller such a right when the buyer is in default for five days and the seller thereafter gives eight days' written notice by registered mail. Such notice was given to Hession on November 22, 1961, at which time Hession had been in default some 13 months.

However, the right to rescind, as distinct from the lien, does not survive a sale by the buyer to an innocent purchaser for value (Personal Property Law, § 105). On this branch of the case, the issue of whether plaintiff was an innocent purchaser for value is consequently vital. As pointed out above, if Doria was an entity it must have known that Hession had not paid for the goods and hence had at best a voidable title to them. Under the particular conditions of the organization of plaintiff's business, the knowledge of Doria, even though one and the same as the knowledge of an agent doing business with Doria, is the knowledge of the plaintiff. Hence, plaintiff knew of the defect in Hession's title when it acquired the goods. Not being an innocent purchaser, the sale could not cut off defendant's right to rescind.

I would vote to reverse and grant judgment to defendant.

RABIN, J. P., VALENTE, STEVENS and EAGER, JJ., concur in *Per Curiam* opinion; STEUER, J., dissents in opinion.

Judgment affirmed, with $50 costs to plaintiff.