(120 App. Div. 237)

BROOKLYN DISTILLING CO. v. STANDARD DISTILLING & DISTRIBUTING CO.

(Supreme Court, Appellate Division, First Department.  June 21, 1907.)

1. MONOPOLIES—RIGHTS OF PERSONS DEALING WITH COMBINATION.

Under Laws 1897, p. 310, c. 383, prohibiting an arrangement or combination whereby a monopoly in the production or sale of any article in common use is or may be created, or whereby competition in the supply or price of such article is or may be restrained or prevented, a lease of a dis- ·tillery to a corporation, organized to create a monopoly in the manufacture and sale of alcohol and spirituous liquors, is not invalid, though the lessor, which did not become a party to the illegal combination, knew the motive of the lessee in taking the lease was to aid in the accomplishment of its unlawful purpose.

2. CORPORATIONS—KNOWLEDGE OF OFFICERS.

Plaintiff corporation leased its distillery to defendant, organized to create a monopoly in alcohol and spirituous liquors. Plaintiff's president, who was interested in defendant, knew of the illegal purpose for which defendant was organized, and which induced it to take the lease. *Held,* that under the rule that, where the agent is engaged in doing an act against his principal's interest, his knowledge will not be imputed to the principal, the knowledge of plaintiff's president would not be imputed to it, if with such knowledge the lease would be void, and so prevent plaintiff recovering rent on it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 1748–1762.]

Scott, J., dissenting.

Appeal from Trial Term.

Action by the Brooklyn Distilling Company against the Standard Distilling & Distributing Company. From a judgment for plaintiff entered on a decision after a trial without a jury, defendant appeals. Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, SCOTT, LAUGHLIN, and HOUGHTON, JJ.

John L. Cadwalader, for appellant.
Herbert Parsons, for respondent.

McLAUGHLIN, J.  On the 28th of June, 1898, the plaintiff leased to the defendant certain real estate on which was located a distillery, not then quite completed, for a term of three years from July 1, 1898, with privilege of renewal for four years. The defendant went into possession of the premises leased and paid the rent, which was payable in monthly installments, to and including the month of November, 1899. It thereafter refused to pay, though remaining in possession, and this action was brought to recover installments which had become due, together with certain sums paid by the lessor for taxes and insurance. The only defense relied upon at the trial was the alleged illegality of the lease; defendant contending that it was illegal and void, inasmuch as it was made in violation of the statute which prohibits an arrangement or combination whereby a monopoly in the manufacture, production, or sale in this state of any article or commodity in common use is or may be created, or whereby competition in the supply or price of such article or commodity is or may be restrained or prevented. Chapter 383, p. 310, Laws 1897. The plaintiff had a judgment, from which defendant appeals to this court, and it contends here, as it did at the trial, that the lease is void, having been in violation of the statute referred to, and, the recovery being predicated on the lease, is erroneous.

The execution of the lease is conceded, as is also the fact that the defendant went into possession of the distillery and paid the rent stipulated to be paid to and including November 1, 1899, and it is not denied that it has since remained in possession, and wholly failed and neglected to make any further payments. The general rule is that a tenant who has gone into possession under a lease must either pay the rent which is due or vacate the premises; that he cannot keep both the rent and possession. Douglas v. Cheesebrough Building Co., 56 App. Div. 403, 67 N. Y. Supp. 755. But it is said this rule does not apply because the relation of landlord and tenant was never created, inasmuch as the lease was void in its inception. The assertion that the lease is void is predicated upon the fact that the defendant was incorporated for the purpose of creating a monopoly in the manufacture and sale of alcohol and spirituous liquors, and regulating the price at which the same should be sold to the public, in violation of the statute, and that the making of the lease was a part of and to aid in the accomplishment of the unlawful purpose, of which the plaintiff had full knowledge at the time the lease was executed. If it be assumed that the plaintiff had all the knowledge which the defendant had as to its purpose in making the lease, I do not think that in and of itself

made the lease void. There was no obligation resting upon the plaintiff to operate its distillery at all, much less at a loss; nor was there any obligation to let it lie idle. If it did not see fit to do either, it could sell or lease it. This naturally leads to the question of what its board of directors should have done when the proposition was made by the defendant to lease. The plaintiff then had invested nearly $1,000,000 in the construction of the distillery, which was designed to produce alcohol and spirituous liquors from the refuse of sugar and molasses. It was then somewhat problematical whether or not this could be successfully done; it not having been theretofore demonstrated in a practical way. Not only this, but, if successful in producing the alcohol and spiritous liquors in the way contemplated, it was threatened at the outset with very serious competition by the defendant. Should it then have operated the distillery at a possible loss, allowed it to remain idle, or leased for a term of years at a rental which would insure to its stockholders a good return on the capital invested? Good business judgment would seem to suggest the answer to the questions propounded, viz., to accept the certainty instead of the uncertainty. The statute does not prevent one selling or leasing property, nor does it prevent one buying or leasing property to prevent competition. Diamond Match Co. v. Roeber, 106 N. Y. 473, 13 N. E. 419, 60 Am. Rep. 464; Leslie v. Lorillard, 110 N. Y. 519, 18 N. E. 363, 1 L. R. A. 456; Tode v. Gross, 127 N. Y. 480, 28 N. E. 469, 13 L. R. A. 652, 24 Am. St. Rep. 475. It is designed to prevent the owners or controllers of property entering into a combination to regulate production and maintain prices for their mutual benefit, according to their respective interests.

The court, in Cummings v. Union Blue Stone Co., 164 N. Y. 401, 58 N. E. 525, 52 L. R. A. 262, 79 Am. St. Rep. 655, clearly pointed out the purpose of the statute and the kind of a contract which, if made, would be void under it; but in doing so it took occasion to say:

"It may be conceded that the law as now understood restrains no one from selling his property, nor does it compel any one to continue a business which he can sell or finds it is to his interest to abandon, much less to continue it for any time or in any particular manner or place. * * * Contracts between individuals to that effect are not in general restraint of trade."

And substantially the same statement was made in Wood v. Whitehead Bros. Co., 165 N. Y. 545, 59 N. E. 357, which was cited with approval in New York Bank Note Co. v. Hamilton Bank Note Co., 180 N. Y. 280, 73 N. E. 48.

The fact that the plaintiff knew the defendant's motive in leasing the distillery did not render the lease invalid. The validity of a contract under this statute cannot be made to depend upon the motive of one of the parties. This was held in the Diamond Match Co. Case, supra, where the court said:

"We are not aware of any rule of law which makes the motive of the covenantee the test of the validity of such a contract; on the contrary, we suppose a party may legally purchase the trade and business of another for the very purpose of preventing competition, and the validity of the contract, if supported by a consideration, will depend upon its reasonableness as between the parties. Combinations between producers to limit production and to enhance prices are, or may be, unlawful, but they stand on a different footing."

It must be borne in mind that the plaintiff in making the lease did not in any way become a party to the illegal combination or participate to any extent in any scheme to avoid the statute by controlling the manufacture or sale of the commodity referred to. The lease was the only contract which it made with the defendant. It could just as well be contended that a contractor who had built the distillery for the defendant, with knowledge of its purpose, was not entitled to recover the contract price, or that a farmer who had sold his corn to the defendant, knowing its purpose in buying it, could not recover the price agreed to be paid, as it can that the plaintiff is not entitled to recover in this action. The plaintiff, as we have already seen, took no part in the illegal combination; could derive no benefit from it or from the incorporation of the defendant, or the carrying out of its purpose; had nothing to do with regulating the quantity of alcohol and spirituous liquors to be produced, or the price to be charged, and therefore this contract is clearly distinguishable from those where premises are leased to be used for an immoral purpose.

The foregoing discussion has been upon the assumption that the plaintiff knew the illegal purpose for which the defendant was formed and which induced it to make the lease in question. But there is, in fact, no evidence which would justify a finding to this effect. The only evidence bearing on that subject is that Matthiessen, its president (since deceased), had that knowledge, and it is claimed that the knowledge which he had is to be imputed to his principal. This is the general rule; but it does not apply where the agent is engaged in doing an act against his principal's interest. Benedict v. Arnoux, 154 N. Y. 715, 49 N. E. 326. It is undisputed that Matthiessen was largely interested in the defendant company. He was one of its promoters, directors, and a member of its executive committee. Appellant insists that in the negotiations which resulted in the execution of the lease Mattheissen acted, not in the interest of the defendant, but in the interest of the plaintiff, and therefore his knowledge must be imputed to the plaintiff, and yet it is insisted that the lease procured by Matthiessen is void, for which reason defendant cannot be compelled to pay the rent stipulated. If the lease were illegal and void, Matthiessen must have known it because he is presumed to have known the law, and, if he induced the plaintiff to execute it, knowing it to be void and unenforceable against defendant, being himself personally interested in the defendant, it cannot be said he was acting in the interest of the plaintiff. Either the lease is valid, in which case it is immaterial for whom Matthiessen acted, or else it is invalid because made for an illegal purpose. If the latter, it was made against the interest of the plaintiff, and the presumption is that Matthiessen did not impart to the plaintiff the knowledge which he had of the defendant's illegal purpose. Benedict v. Arnoux, supra.

I am of the opinion that the judgment is right, and should be affirmed, with costs.

PATTERSON, P. J., and LAUGHLIN and HOUGHTON, JJ., concur.

SCOTT, J. (dissenting). In this action the plaintiff has recovered a judgment for rent of a distillery property leased to defendant on June 28, 1898, for a term of three years from July 1, 1898, with the privilege of renewal for four years longer. The defendant paid the rent up to November 1, 1899, but has refused to pay any further installments. The defense is, in brief, that the defendant was organized for an unlawful purpose, to wit, the creation of a monopoly in the production and sale of alcohol and spirituous liquors; that the lease was entered into with knowledge on the part of plaintiff of said unlawful purpose and in furtherance of such purpose; that the lease is therefore void, and no action upon it can be maintained. The statute in force at the time the lease was made is known as chapter 383, p. 310, of the Laws of 1897, the first section of which reads as follows:

"Every contract, agreement, arrangement or combination whereby a monopoly in the manufacture, production or sale in this state of any article or commodity of common use is or may be created, established or maintained, or whereby competition in this State in the supply or price of any article or commodity is or may be restrained or prevented, or whereby for the purpose of erecting, establishing or maintaining a monopoly within the state of the manufacture, production or sale of any such article or commodity, the free pursuit in this state of any lawful business, trade or occupation is or may be restricted or prevented is hereby declared to be against public policy, illegal and void."

The following facts appear to be established beyond dispute: First. That the purpose of the organization of the defendant was to establish and maintain within the state of New York and throughout the United States a monopoly in the manufacture and sale of spirits and alcohol, commodities in common use. Second. That, as a means of arriving at the result, it was a part of the scheme to obtain control, by purchase or lease, of practically all the existing distilleries or plants for distilling spirits and alcohol. Third. That the lease herein sued upon was made in furtherance of such scheme to create a monopoly, and for the purpose of preventing the plaintiff's plant from being used to produce spirits and alcohol in competition with the defendant. Upon these facts it would appear prima facie that the lease was such an instrument as is, by the statute quoted above, declared to be against public policy, illegal, and void.

It is, however, contended by the plaintiff that although the intent of the defendant, and the object of its incorporation, and its purpose in acquiring the lease in question, may have been such as has been described, yet that the plaintiff had no knowledge of such intent, object, or purpose, and therefore that, so far as it was concerned, the lease was as innocent a document as it appears to be upon its face, and not made in contravention of the statute. This view was accepted by the court below, and the question whether or not it is justified by the evidence is the real point in controversy upon this appeal. The lease in question was executed in behalf of plaintiff by one F. O. Matthiessen, its president, who is now deceased. That he knew all about the organization of defendant and its purposes and objects is not disputed. He was one of the underwriters of the scheme, and upon its organization became a director of the defendant company. If the plaintiff company possessed the knowledge that Matthiessen

.possessed, it is chargeable with full knowledge of the objects for which defendant was organized, and of the illegal purpose for which the lease was procured to be executed. · Matthiessen, as has been said, is dead, and none of the directors of plaintiff who authorized the execution of the lease on its behalf testified as to whether or not Matthiessen communicated to the directors his knowledge concerning the inducements which led to making the lease. We are therefore left to apply those rules of presumption which are applicable in such a case. Primarily it is to be presumed that the president of a corporation who acts in its behalf and executes contracts in its name has communicated to his principal, the corporation, whatever knowledge he has acquired with reference to the transaction, and consequently his knowledge is, in general, attributable to the corporation. I do not understand that the plaintiff dissents from this general proposition; but it does insist that the circumstances bring the case within the exception to the rule, under which a contrary presumption arises. That exception is well stated in Benedict v. Arnoux, 154 N. Y. 715, 49 N. E. 326, wherein Judge Haight says:

"So long as the agent acts within the scope of his employment, in good faith, for the interest of his principal, he is presumed to have disclosed to his principal all the facts that come to his knowledge as agent; but, just as soon as the agent forms the project of dealing with his principal's property for his own benefit and advantage, or for the benefit and advantage of other persons, who are opposed in interest, he ceases in fact to be an agent acting in good faith for the interest of his principal, and his actions thereafter based upon such purpose are deemed to be in fraud of the rights of his principal, and the presumption that he has disclosed all the facts that have come to his knowledge no longer prevails."

The learned justice at Special Term was of the opinion that the facts disclosed by the proofs brought the case within the exception of the general rule, basing his conclusion apparently, as the plaintiff now bases the like contention, upon the fact that Matthiessen became a director of defendant and an underwriter of the scheme upon which it was engaged, and as such was a participant in and expectant beneficiary of the unlawful scheme, in the carrying out of which the lease in question was made. Hence it is argued that it must be assumed that his interests were with the defendant rather than with the plaintiff, and that in bringing about the execution of the lease he sought the advantage of the defendant and not that of the plaintiff, and from these premises it is further argued that it is to be presumed that Matthiessen concealed from plaintiff, of which he was president; the knowledge which had come to him. The transaction itself does not indicate that the lease was an improvident or unfavorable one for plaintiff to have made. It had just completed a refinery designed to be used for distilling alcohol from black strap or sugar refuse. Its success in the enterprise was unproven and to some extent problematical. It had expended something less than $1,000,000 in the preparation of the plant. By the lease it was to receive a net rental equal to 5 per cent. upon $2,000,000, the lessee paying all taxes, assessments, water rates, and insurance premiums, thus insuring to the lessor, without any risk of losses, a net return of something over 10 per cent. upon the money invested. This does

not appear on its face to have been an unfavorable or improvident · arrangement for the plaintiff. Would plaintiff have been likely to insist upon more favorable terms if Matthiessen had communicated to it the knowledge he had acquired concerning the plans of those who were engaged in organizing the defendant. If he had so communicated, he would have .told plaintiff that a powerful organization was in process of formation, with well-matured plans, for controlling practically all the plants in the country engaged in producing spirits and .alcohol. This would have meant that at the very commencement of its experiment in producing alcohol plaintiff would find itself confronted with the business rivalry of a most powerful competitor, and it requires little knowledge of affairs to realize that with such knowledge in his possession the plaintiff would be more eager to accept a safe and adequate return upon its investment by way of rental than it might have been if it had believed that its business would be met by no organized opposition. If any presumption is to be indulged in from the fact that the plaintiff abandoned its project of distilling alcohol, and leased its plant, it would seem to be reasonable to presume that it had learned that it would have to meet more powerful opposition than had been expected. It is, moreover, by no means clear that Matthiessen negotiated and arranged for the lease after he had become interested in the defendant's scheme. It is true that the underwriting agreement is dated June 1, 1898, and that the lease is dated on June 28, 1898, and apparently not delivered until July 8, 1898. The evidence shows, however, that it was Matthiessen who first proposed that the plaintiff should be taken into the combination, and that this proposal or demand was made when Matthiessen called at the Manhattan Trust Company to examine and discuss the terms of the underwriting agreement, and hence presumably before he signed the agreement. It further appears that he was very insistent that the plaintiff should be taken in, and that his proposal to that effect met with opposition from some of those interested in organizing defendant. I can see nothing in the circumstances that Matthiessen ultimately became actively interested in defendant to justify the presumption that, in negotiating the lease, he acted in opposition or with indifference to the interests of the plaintiff, or that he had any motive to conceal from plaintiff the knowledge he possessed as to the objects and purposes of defendant. On the contrary, the evidence raises quite · the contrary· presumption in my mind, which is strengthened by the circumstances that none of the living directors of plaintiff appeared to testify that Matthiessen had not communicated his knowledge to them. I think, therefore, that plaintiff by every rule of presumption, is to· be charged with Matthiessen's knowledge. If so, the question remains whether or not the lease was such an instrument as is condemned by statute as illegal and void. The statute above quoted reads in the disjunctive. A contract is illegal if it tends to create a monopoly, or tends to restrain competition in the supply or price of any article, or if it tends to restrict the free pursuit in the state of any lawful business, trade, or occupation. It is not necessary, therefore, to show that the free pursuit of the business of distilling alcohol was restricted, if the contract is ob-

noxious to the clauses of the statute. The statute, in terms, declares illegal and void "every contract, agreement, arrangement or combination whereby a monopoly in the manufacture, production or sale in this state of any article or commodity of common use is or may be created, established or maintained, or whereby competition in this state in the supply or price of any article or commodity is or may be restrained or prevented. * * *" There can be no doubt that the purpose of this organization was that defendant was to obtain control of, and thus to monopolize the manufacture, production, and sale, of alcohol, and the method of achieving this purpose was to obtain by sale or lease all the alcohol producing plants. The contracts, whether of purchase or lease, by which this control was assured, were certainly contracts whereby the monopoly was to be created and established. The distinction between such a case as this, and those relied upon for an affirmance of this judgment, was very clearly put by Judge Landon in Cummings v. Union Blue Stone Co., 164 N. Y. 401–404, 58 N. E. 525, 526, 52 L. R. A. 262, 17 Am. St. Rep. 655:

"The plaintiff cites the cases which permit the vendor to sell his business with or without his plant, and to agree with his vendee that he will not, by competition or other acts, do anything to injure what he sells. Diamond Match Co. v. Roeber, 106 N. Y. 473, 13 N. E. 419, 60 Am. Rep. 464; Leslie v. Lorillard, 110 N. Y. 519, 18 N. E. 363, 1 L. R. A. 456; Tode v. Gross, 127 N. Y. 480, 28 N. E. 469, 13 L. R. A. 652, 24 Am. St. Rep. 475; Hodge v. Sloan, 107 N. Y. 244, 17 N. E. 335, 1 Am. St. Rep. 816. It may be conceded that the law as now understood restrains no one from selling his property, nor does it compel any one to continue a business which he can sell or finds it to his interest to abandon, much less to continue it for any time or in any particular manner or place. * * * Contracts between individuals to that effect are not in general restraint of trade. But the case before us is of a different kind. It is one of such a combination between many dealers as threatened a monopoly, with which the individual would be practically powerless to compete, and the many consumers who would be severally exposed and coerced would be either compelled to submit to its exaction or to forego the purchase of the commodity of customary use needful to them, and but for this monopoly obtainable in the market at reasonable prices. The same evil principle pervades both large and small combinations. All are alike offenders, differing in degree, but not in kind. And hence it is that contracts by which the parties to them combine for the purpose of creating a monopoly in restraint of trade, to prevent competent, to control, and thus to limit production, to increase prices, and maintain them, are contrary to sound public policy and void."

In the present case I suppose that no one will contend that the agreement between the organizers of this defendant and to carry out which it was organized was contrary to the statute against monopolies and illegal, but without this lease and other similar instruments, the mere agreement to create a monopoly would not have created it. The purpose to create a monopoly was carried out, and the monoply actually created by the deeds and leases whereby the defendant obtained control of nearly all the alcohol producing plants in the country. In a most exact sense, therefore, these deeds and leases, including the one under consideration, were the contracts and agreements whereby the monopoly was created. It is idle to speculate as to what the effect would be of a similar taint of illegality upon contracts which have been fully executed before it is attempted to apply the statute to them. This lease, as to the rental now sued for, had not been fully

executed. If, as I am forced to conclude, it was illegal and void, no action can be maintained upon it, but the parties will be left in the position in which they have placed themselves, for the law will not lend itself to the enforcement of an illegal contract, no matter how hard the refusal to act may appear to bear upon one of the parties.

In my opinion, therefore, the judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.