Arthur C. Aulisi, J.
In this action tried before the court without a jury, plaintiff seeks a judgment declaring (1) that it properly disclaimed under a homeowner’s policy of insurance issued by it to the defendants John H. Darby and Charlotte Darby, his wife, with respect to an incident involving their son, the defendant Dennis Darby, an infant, and the defendant, George Scunziano, Jr., also an infant, and (2) that it is not obligated under said policy to defend, on behalf of the defendants John H. Darby, Charlotte Darby and Dennis Darby, an action brought by the defendant Trustees of the Board of Education, Centiral School District No. 1, Towns of Bleecker, Northampton, Mayfield, Benson and Holt [actually Hope], hereinafter referred to as “ School District ”, against said infants alone, or to pay any judgments which may be rendered against the defendants Darby, or either of them. Of course, the only Darby named as a defendant in the main action is the infant Dennis Darby, and the relief demanded in this action must necessarily be limited to the factual situation in the main action with respect to the parties named as defendants therein and the obligation, if any, of the plaintiff under its policy, to any such defendant. The defendants John H. Darby and Charlotte Darby are not named as defendants in the main action and their inclusion in this action stems, apparently, from the fact that the policy in question was issued to them as named insured.
*82 As incidental relief, plaintiff asks that the prosecution of the main action be enjoined pending the final determination of this action.
The alleged incident forming the basis of the main action, which, in turn, ultimately precipitated this action, took place on the 28th day of September, 1969 on the grounds of the North-ville Central School, an institution operated by the defendant School District. It is claimed that on that day, at about 8:30 in the evening, the infant defendants herein, Dennis Darby and George Seunziano, Jr., entered the premises of the School District and while on said premises opened a water valve in the school building resulting in substantial damage to said school building and other property therein.
Prior to the happening of said incident, the plaintiff liad issued and delivered to the defendants John H. Darby and Charlotte Darby, the named insureds, the homeowner’s policy mentioned above covering a three-year period from February 14, 1968 to February 14, 1971 and said policy was in full force and effect at the time of said incident.
The policy in question had been issued to the parents of the Darby youth through one Robert J. Morrison, doing business as R. J. Morrison Agency, of Northville, New York, the authorized agent for the plaintiff. All of the individual defendants were residents of the Village of Northville, a small community of approximately 1,500 inhabitants, and Morrison serviced a large number of these people while acting as authorized agent for several other insurance companies in addition to the plaintiff. One of these companies had issued a homeowner’s policy to tifie parents of the Seunziano youth. In addition, Morrison was the authorized agent for a third insurance company which carried the insurance on the school property. Consequently, at the time of the incident causing the loss to the School District, Morrison was the representative for the three insurance companies involved in the loss.
On the morning following the incident, at about 9:00 a.m., Morrison, after learning of the incident, went to the school and inspected the damage with the school principal. After concluding that a claim would be filed by the School District, Morrison contacted the insurance company covering the school property and advised them of the loss, and representatives of this company investigated the loss. At this time, there was no indication of where the responsibility for the loss might be.
Sometime in the early part of November, 1969 following an investigation of the incident by the public authorities, Morrison *83 for the first time learned that the Darby and Scunziano youths were alleged to have committed the act causing the loss. Morrison testified that he first heard about it from the school principal and on the following day, November 6 read about it in the local newspaper. Morrison further testified that at this time he knew that the parents of each of the boys had homeowner’s policies with him, that the Darby policy was the only insurance that the Darby family had with him, and that neither he nor any person covered by either homeowner’s policy did anything in the way of making a report of the incident to the respective insurance companies. Morrison did not think that the loss was covered by the homeowner’s policy and he so testified.
At about this time, the Darby youth was arrested and his father immediately retained counsel to represent the boy in the criminal matter. The boy was indicted and eventually pleaded guilty as a youthful offender on or about March 21, 1970. As a part of the disposition of the criminal matter, the County Judge directed that the boy make restitution to the School District in the amount of $500 to cover damages not covered by the School District’s own insurance, with the understanding that such amount was not to be paid for him by his parents or anyone else, but was to be paid out of funds to be earned by the infant.
Nothing further developed with respect to the incident until some time in the month of November, 1970 when the defendant John H. Darby received a letter, dated November 12 from attorneys representing the insurance carrier covering the school property advising him of their retainer with respect to the incident. The letter was immediately taken to the lawyer who handled his son’s criminal case. By letter dated December 1, 1970 said insurance carrier’s attorneys notified the plaintiff of their retainer and copies of this letter were sent to Morrison, defendant John H. Darby and to the lawyer who handled the son’s criminal case. On December 2, the latter also wrote to the plaintiff advising of the receipt of the letter of December 1, the nature of the claim being made, the incident out of which it arose and the policy held by defendant John Darby and his wife, and reserved all rights which the insured and his son had under the policy. By letter dated December 3, Morrison wrote to the plaintiff a detailed account of the incident, expressing his opinion that the Darby youth was not covered under the policy because he was over 17 years of age.
By letter dated December 8, plaintiff disclaimed on the grounds of the breach of the notice condition of the policy and “ for other reasons ”.
*84 Upon the trial of this action, the only position taken by the plaintiff was that its disclaimer was proper and it was not obligated to defend the main action because the insured did not give notice of the incident as required by the policy.
It is the position of the defendants that Morrison’s knowledge of the incident and the involvement of the Darby youth was imputable to the plaintiff as notice under the policy thus obviating the necessity of a formal notice by the infant, that the delay in giving such notice was reasonable under the circumstances of the case and, therefore, excusable, and further that the delay in giving such notice was also excusable because the Darby youth was an infant, did not know of the existence of the policy, did not know that he was an additional insured under the policy and covered by its provisions, and did not know that the incident of which he was accused was an occurrence covered by tbe policy.
The rule is well established that a principal is bound by notice to or knowledge of his agent in all matters within the scope of his agency, although in fact the information may never actually have been conveyed to the principal. (Farr v. Newman, 14 N Y 2d 183, 187; McCutcheon v. Dittman, 164 N. Y. 355; Benedict v. Arnoux, 154 N. Y. 715, 728.) The rule rests upon the duty of the agent to disclose to his principal all material facts coming to his knowledge with reference to the scope of the agency and upon the presumption that the agent has discharged his duty. (Benedict v. Arnoux, supra.)
There can be no question that Morrison was the duly authorized agent of the plaintiff or that the information which he had relating to the incident at the school, insofar as it may have affected persons insured by the plaintiff, was a matter within the scope of his agency. Consequently, it must follow that knowledge on the part of Morrison is imputable to the plaintiff, regardless of whether such information was communicated to it by its agent Morrison.
The plaintiff, however, seeks to avoid the application of the general rule by relying upon the cases of Benedict v. Arnoux (supra) and Farr v. Newman (supra). The former held that an agent’s knowledge is not imputable to his principal when the agent is defrauding his principal. The latter case actually held that the knowledge of the agent was imputable to the principal. Plaintiff also urges that where an agent undertakes to act in a transaction for two parties whose interests are and can be adverse, knowledge of the facts arising from the transaction on the part of the agent is not deemed knowledge of the principal. *85 An example of such a situation arose in Otsego Aviation Serv. v. Glens Falls Ins. Co. (277 App. Div. 612). Collectively, these cases, which are regarded as exceptions to the general rule stated above, stand for the proposition that an agent’s knowledge is not imputed to his principal when the agent is defrauding or otherwise acting against the interest of his principal for the benefit of another. In such cases, it is said that the knowledge of the agent will not be imputed to the principal because it cannot be presumed that the agent will normally communicate the information to his principal in the course of the performance of his duties.
The exceptions to the general rule cannot have any application to this action. Certainly, no question of fraud is present here and only the question of an agent acting for two principals whose interests are adverse need be considered. The nature of the adverse interest present in Otsego Aviation Serv. v. Glens Falls Ins. Co. (supra) and that claimed to exist in this action are readily distinguishable. In that case, the policy contained a ■ provision that it was void unless the insured had unconditional and sole ownership of the airplane. The issuance of the policy was negotiated for the insurance company by its local agent who also served as an officer, director and stockholder of the claimant corporation. In such a situation, it could not be presumed that the agent would normally communicate to the insurance carrier information regarding the change in the ownership of the airplane and, hence, such information would not be imputed to the carrier. Here, there is nothing to indicate or suggest that Morrison, in the normal performance of his duties as agent of the plaintiff, would not have communicated to the plaintiff information regarding the incident had he believed it to be covered by the policy issued by the plaintiff to the Darbys. His belief that the incident was not covered by the policy was the apparent reason he did not report the matter to the plaintiff and it was not because the two insurance companies he represented might be on opposite sides in litigation growing out of the incident. Morrison represented several insurance companies in a small village and it would be inconceivable that some of these companies would not be opposing litigants at one time or another. Such multiple representation, common as it is in the insurance business, does not compel the inference of “ adverse interest ” as that term is used in the cases setting forth the exceptions to the general rule. If Morrison had knowledge or notice of an occurrence involving two of his insurance companies in a case where coverage was apparent and communicated the information *86 to one but not the other, he would be no less an agent of the latter simply because he had already imparted such knowledge to the former and their interests were conflicting. •
In view of the foregoing, the court finds and decides that the information which agent Morrison had was imputable to the plaintiff, his principal, and, hence, it was not necessary for the infant, Dennis JDarby, to give additional notice under the policy.
Apart from the question of agent Morrison’s knowledge being imputed to his principal, however, other considerations require a determination in this action adverse to the plaintiff.
The homeowner’s policy issued by the plaintiff to the parents of the Darby youth contained the usual general provision that notice be given “as soon as practicable” after an occurrence takes place. Such a provision has been construed to require that such notice must be given within a reasonable time in the light of all of the facts and circumstances of a particular case. (Deso v. London & Lancashire Ind. Co. of Amer., 3 N Y 2d 127.) The reasonableness of a delay in giving such notice, where mitigating circumstances are present, is ordinarily a question to be resolved by the triers of fact. (Deso v. London & Lancashire Ind. Co. of Amer., supra; Gluck v. London & Lancashire Ind. Co. of Amer., 2 A D 2d 751, affd. 2 NY 2d 953; Marcus v. London & Lancashire Ind. Co. of Amer., 6 A D 2d 702, affd. 5 N Y 2d 961.) Although the court in the Deso case held that on the facts of that case the notice was not timely as a matter of law, it distinguished p, situation such as that present in the Gluck case where the insured had testified that the reason for the delay was his unawareness that the contract of insurance covered the accident, indicating that “ once the insured was alerted to contract coverage he gave prompt notice ”. (Deso v. London & Lancashire Ind. Co. of Amer., supra., p. 131.)
Where the question of the timeliness of the notice of an occurrence by an additional insured to an insurer is involved and the additional insured is not aware of the fact that he was covered under the policy issued to the named insured, delay in giving such notice has been held excusable. (Jarka Corp. v. American Fid. & Cas. Co., 19 A D 2d 141, affd. 14 N Y 2d 714; Greaves v. Public Serv. Mut. Ins. Co., 4 A D 2d 609, affd. 5 N Y 2d 120.)
Even a delay of seven months by a named insured in giving notice of an off-premises accident to his insurer was held to be excusable where the named insured was not aware that such an accident was covered by his homeowner’s policy and gave prompt notice within a week after suit was brought against him and he *87 was informed by his attorney that such coverage .existed under his policy. (Padavan v. Clemente, 43 A D 2d 729.)
In this action, the only person insured under plaintiff’s policy against whom any claim is made in the main action is the infant defendant Dennis Darby. The boy was not a named insured under the policy but held the status of an additional insured by reason of the fact that he fell Avithin one of the general categories of additional insured persons included in the definition of the word “insured” in the policy. His parents, John H. Darby and Charlotte Darby, to whom the policy was issued by plaintiff, are defendants in this action, but are not named in the main action, and no claim is being made against them.
The uncontroverted testimony in this case clearly shows, and the court so finds, that the infant defendant, Dennis Darby, possessed no actual knowledge that a claim was going to be made against him for damages arising out of the incident in which he was involved, nor was he aware of the existence of a contract of insurance which covered him, as additional insured, for that particular incident, until after the receipt of the attorneys’ retainer letter of November 12, 1970. He was, throughout this entire period, an infant of 17 years, unfamiliar with insurance matters, and when the proceedings in the County Court terminated with the disposition of the charge against him, he regarded the matter at an end.
Moreover, the testimony has clearly established that the plaintiff’s agent, Morrison, did not regard the incident to be a reportable one and did not believe that it was covered under the Darby policy. According to the testimony, he was experienced in insurance matters and presumably familiar with the .terms of the policy issued through him to the Darby parents. He had direct knowledge of the incident, the negotiations between the School District and its insurance carrier, and the involvement of the Darby youth. He had more information available to him than any one person connected with the affair. Under these circumstances, it would be unreasonable to require the infant, Dennis Darby, to give notice to the plaintiff before the events which took place during the latter part of November, 1970 especially in view of the fact that he was not aware of the existence of his parent’s policy, let alone the coverage afforded to him as an additional insured with respect to the incident in which he was involved.
It is, therefore, the opinion of the court that under all of the circumstances of the case, the delay in giving notice of the incident to the plaintiff in behalf of the infant defendant, Dennis *88 Darby, was excusable and'that the notice given in behalf of said infant on December 2, 1970 was timely and in accordance with the terms of the policy.
Accordingly, the defendants are entitled to a judgment dismissing the complaint. However, in view of the fact that the question of an award of counsel fees for the services rendered the infant defendant, Dennis Darby, was left for determination at a future date, jurisdiction of that phase of the action is retained by the court for the submission of proof on a date to be agreed upon by interested counsel and the court not later than August 22, 1974 or such other disposition of the question as may be agreed upon by such counsel.