OPINION OF THE COURT
David O. Boehm, J.
Third-party plaintiff, Hydrant Hose Company No. 1 (Hydrant), has brought this declaratory judgment action seeking a declaration that it is covered under the excess liability policy issued by the third-party defendant, Firemen’s Fund Insurance Company (Firemen’s Fund) to the City of Geneva (Geneva). Hydrant is now moving for summary judgment against Firemen’s Fund.
The primary action was brought to recover for personal injuries sustained by plaintiff, Janet L. Cook, in a one-car automobile accident which occurred on May 16, 1980. Cook was a passenger in a car owned and operated by Ronald F. Warren, a *262 member of Hydrant. The accident occurred while Warren was responding to a fire in Geneva and Warren was killed.
Hydrant is a volunteer fire company located entirely within the Geneva city limits. At the time of the accident it was insured by the Maryland Casualty Company. A provision in the policy excluded any claim arising from the operation of an automobile.
Geneva was itself covered by a blanket excess liability insurance policy issued by Firemen’s Fund and had primary insurance coverage with the Hartford Insurance Company. Although not expressly named as such, Hydrant, in another proceeding, was declared an insured under the Hartford policy by order of the Ontario County Supreme Court dated February 22, 1984.
Hydrant contends that it is entitled to coverage under the Firemen’s Fund policy because it is a “named insured” as that term is defined in the policy. Section 1 (3) of the definitions portion of the policy defines “named insured” as “any organization the control and management of which is now held * * * by the [City of Geneva].”
Alternatively, the plaintiffs in the primary action, who were permitted to intervene on this motion, contend that even if Hydrant is not a “named insured” under the Firemen’s Fund policy, it is an “insured” under the language of section 2 (3), which defines an insured as “any person or organization * * * included as an additional insured in any primary policy”.
The City Charter of Geneva creates a fire district which encompasses the geographical boundary of the city. Under the charter, a fire commission consisting of three members is appointed by the city counsel. Geneva City Charter § 9.6 provides for a fire department consisting of volunteer companies, a fire chief and other officers, a superintendent of fire alarms and paid employees of the department. The fire chief is a paid civil service employee and is in charge of the 21 drivers who drive the fire trucks. They are the only other paid civil service employees of the department. There are also three assistant fire chiefs who are not civil service employees.
The fire vehicles and equipment are owned by the city but section 9.5 of the charter places all property in the charge of the fire commission and the fire chief. Some of this equipment is kept at the Hydrant Hose fire station under a lease agreement with the city.
Geneva has no municipal fire department as such. There are, instead, three separate volunteer fire companies, Hydrant Hose Company, Nester Hose Company and the Folger Hook and *263 Ladder, each of which is a distinct, self-supporting corporation having its own charter, by-laws, directors and officers. The admission of new members is controlled by each volunteer company. However, once a new member is voted in, his or her membership is contingent upon approval by the fire commission. Review by the commission is primarily limited to verifying the residency requirements. Not everyone affiliated with Hydrant is a volunteer. For example, paid drivers stationed at Hydrant Hose Station are also members. However, no distinction is made between paid and volunteer members with regard to holding office or committee activities.
Although the fire chief is not involved with the admission of members, he has command over them during training exercises, fire fighting and fire prevention activities. He is also responsible for and conducts the training of volunteers. In addition, he issues authorization for volunteers to display blue lights on their personal vehicles.
One paid driver always acts as the dispatcher. Upon receiving a report of a fire he tells the other driver on duty with him where to respond and then trips the radio monitors to alert the volunteers of the fire location. In examinations before trial, two volunteer captains, Lawrence Wetherbee and William Allen, Jr., as well as Chief Carlton Naegele, testified that the chief assumes command of the volunteers as soon as an alarm is sounded. The chief also directs which streets are to be used in responding to a fire.
At times the chief also issues orders and regulations addressed to volunteers and drivers alike, but there is no department procedure for the enforcement of such regulations, except as against drivers.
Although generally questions of control are questions of fact (O’Brien v Garden Way Mfg., 72 AD2d 860; Hill v Erdle Perforating Co., 53 AD2d 1008), where the facts are undisputed, as here, the question becomes one of law (Braxton v Mendelson, 233 NY 122; see also, Plymouth Rock Fuel Corp. v Leucadia, Inc., 100 AD2d 842; 2 NY Jur 2d, Agency, § 28). Another equally applicable rule is that when the language of an insurance policy is clear and unambiguous, rules of construction are unnecessary (see, Dorman v Cohen, 66 AD2d 411, 414; 29 NY Jur, Insurance, §§ 597, 598) and effect must be given to the intent of the parties as indicated by the language itself (Breed v Insurance Co. of N. Am., 46 NY2d 351, rearg denied 46 NY2d 940; 22 NY Jur 2d, Contracts, § 188). Clear and unambiguous terms in an insurance policy are to be taken and understood in their plain, ordinary and popular sense (29 NY Jur, Insurance, §§ 607, 608).
*264 Hydrant is an independent corporation, virtually free to carry on its internal affairs without interference by the City of Geneva. This independence is expressly preserved in Geneva City Charter § 9.4, which states “[njothing in this Charter shall be construed to affect the organization, status, or property of the volunteer fire companies of the Geneva volunteer fire department.”
Nevertheless, the facts presented on this motion clearly indicate that Hydrant’s independence ends when a fire alarm is sounded. At that point the fire chief assumes command over the volunteer companies in order to coordinate and direct the fire fighting efforts. Furthermore, apparently in order to facilitate a uniform response to the fighting of fires and other emergency situations, the chief is also in command of the training of volunteers. And, while the City Charter expressly preserves the independence of volunteer companies in certain respects, section 9.6 of the charter nevertheless directs that the fire chief “shall be in command of the Department and the volunteer companies.”
Not only is the city vested with control over the volunteer companies through the fire chief by virtue of its own charter, but Not-For-Profit Corporation Law § 1402 (e) (1) also provides for such control. “A fire, hose, protective or hook and ladder corporation heretofore incorporated under any general law or a fire corporation hereafter incorporated under this section shall be under the control of the city, village, fire district or town authorities having, by law, control over the prevention or extinguishment of fires therein. Such authorities may adopt rules and regulations for the government and control of such corporations.” Furthermore, General Municipal Law § 209-Z provides in part: “The authorities having control of fire departments of cities, towns, villages and fire districts may make regulations governing the removal of volunteer officers and volunteer members of such departments and the companies thereof.”
Thus, both the Geneva City Charter and State legislation impose control over Hydrant upon Geneva. In addition, the examinations before trial plainly show that when Hydrant’s membership is responding to and working at the scene of a fire, they are directed, coordinated and, in effect, managed by the fire chief. At the time of the accident, therefore, the control and management of Hydrant was indisputably in Geneva and it must therefore follow that Hydrant is a named insured under the policy.
This holding is consistent with the rule that fire districts may be held liable for the negligence of volunteer fire fighters while *265 operating privately owned vehicles in responding to an alarm (Thomas v Consolidated Fire Dist. No. 1, 50 NY2d 143; Cuddy v Town of Amsterdam, 62 AD2d 119). It is also consistent with Volunteer Firefighters’ Benefit Law § 5, which requires political subdivisions to provide benefits to volunteer fire fighters injured not only while working at a fire, but also during necessary travel to and from such fire or emergency.
Even were Hydrant not a “named insured” under the Firemen’s Fund policy, it would be entitled to coverage as an “insured” but, it should be emphasized, not by virtue of the prior decision of the Ontario County Supreme Court. Firemen’s Fund was not a party to that action. Application of the doctrine of collateral estoppel, or issue preclusion as it has more recently been called (see, Matter of American Ins. Co. [Messinger — Aetna Cas. & Sur. Co.], 43 NY2d 184, 189, n 2), requires that the litigant who will be held precluded has had a full and fair opportunity to litigate the issue in the prior proceeding (Capital Tel. Co. v Pattersonville Tel. Co., 56 NY2d 11, 17; see also, 9 Carmody-Wait 2d, NY Prac § 63:229).
Nevertheless, the undisputed evidence supports the finding that Hydrant is an insured under the city’s primary policy with Hartford even though not expressly named as such. A Hartford internal memo from underwriter Peter Thomson to agent Fink Rapalee, dated July 9, 1979,* states: “[w]e have received the contract and it looks like no endorsement is necessary. We are picking up fire depts. on the policy, and this hose company appears to be another branch of Geneva. Since they are part of the city and respond to those fires for the city, they are pushed up under the city’s policy. They are additional insureds and don’t have to be named for their liability”.
A later memo, dated October 8, 1979, also from Thomson to Rapalee, states, “[t]o restate our previous position, as long as Hydrant Hose Co. #1 is a volunteer company working for the city, we are pushing up their liability as such.”
These internal memoranda establish that Hartford viewed Hydrant as an insured under Geneva’s primary policy with Hartford. Although not named as such in the policy, the effect is the same as if it were. For the purpose of coverage Hydrant is “included as an additional insured”, making it also an insured under the Firemen’s Fund policy and entitled to coverage under that policy as well.
Accordingly, Hydrant’s motion for summary judgment is granted.

 The Hartford policy in effect in 1980 was a renewal of the policy in effect in 1979.