This is an appeal from an order granting Seaboard System Railroad's motion for a new trial. Appellant, Richard Coffee, had received a jury award for compensatory damages in the amount of $895,000.
Coffee worked as a trainman for Seaboard. Part of his job was to switch hopper cars at a private side rail owned by the Jessie Morrie Sand Company. While working at this particular location, Coffee stepped from a hopper car and tripped on an object which was hidden from view by a large accumulation of sand. He suffered severe, permanent injury to his knee. The testimony tended to show that this accumulation of sand created a generally hazardous working environment. Appellant brought suit under the Federal Employers' Liability Act (F.E.L.A.),45 U.S.C. § 51, et seq. The F.E.L.A. provides that every common carrier by railroad shall be liable for damages suffered by an employee of the carrier caused, in whole or in part, by the negligence of the carrier or its agents. Under the F.E.L.A., Seaboard has a nondelegable duty to provide a reasonably safe workplace.
Seaboard's motion for a new trial contained several grounds in support of the motion. The trial court's order does not specify the grounds upon which it was based. Nevertheless, it is due to be affirmed if it is supported by any good ground.Johnson v. Hodge, 291 Ala. 142, 279 So.2d 123 (1973) (overruled on other ground).
Seaboard's motion states 22 reasons why a new trial should be granted. Most of these reasons overlap and can be grouped into four separate grounds: (1) the verdict of the jury is contrary to law; (2) the verdict of the jury is against the great weight and preponderance of the evidence; (3) the verdict is excessive; and (4) Seaboard was denied a fair trial as a result of improper remarks made to the jury by counsel for plaintiff. The fourth ground appears to be the ground upon which the trial court relied. This is the only ground discussed by Seaboard in its brief filed in the trial court.
During cross-examination of a witness by counsel for Seaboard, Coffee's counsel made an objection which was followed by an exchange during which the improper remarks were made (Mr. Tally is counsel for Seaboard; Mr. Florie is counsel for Coffee):
 "Q. With respect to any railroad crew coming in there working the sand down there, do you know whether or when Jessie Morrie industry has or hasn't given the railroad permission to come in there and work their tracks?
 "MR. FLORIE: Object to that, Judge, please, sir. They have got a reason —
 "MR. TALLY: I'm going to object to the lawyer testifying.
 "MR. FLORIE: I can state my objection. There's the Jessie Morrie lawyer right there (pointing). They have got a claim over an agreement to get back every cent they have to give out in this lawsuit. If he goes into the agreements, I have got a right to go into some things, too.
 "MR. TALLY: I agree with that statement, Your Honor, and I want to put some more statements on the record in this case.
 "THE COURT: We will do all that in just a minute. . . ."
A conference in the judge's chambers followed wherein counsel for Seaboard made a motion for a mistrial, based on the remarks made by plaintiff's counsel. These remarks were obviously of great concern to the trial judge, as is evidenced by the judge's statements made during the discussion in chambers:
 "THE COURT: Y'all have got an interesting situation here. I think to keep order and preserve something here without immediately granting your motion, Mr. Tally, I'm going to take this position at the moment. I'm going to take the position that it would be improper to refer to anybody in the courtroom as being counsel for whatever the industry's name is. I think we need to stay away from that." *Page 478 
No further action was taken at that time. The next day Seaboard renewed its motion. The motion was denied. Seaboard then requested that curative instructions be given to the jury. The trial court responded as follows:
 "THE COURT: Let me say this to both of you, you have got the issues here and it is a fine line, as we have discussed. I think two things: (1), I think that probably something in the way of instructions in this general area may be something other than what we have talked about, and I'm really not sure what. I would be — well, my conviction is whatever instructions I give, I ought to give as part and parcel of my charge, and I think I wouldn't give anything right now. Mr. Tally, I am not at all unwilling to consider something along the lines which you have requested. I say this to you and I say it to both of you as advocates, that I would like to be able to give something that was accurate, understandable and neutral, if I can. I will devote a little time to that and probably will come up with something."
It appears, as Seaboard contends, that the trial court considered a curative instruction necessary. However, no such instruction was ever given.
This Court has on many occasions noted the impropriety of making references to agreements requiring a non-party to indemnify a party for the expenses of a lawsuit. See, e.g.,Robins Engineering, Inc. v. Cockrell, 354 So.2d 1 (Ala. 1977). Counsel for plaintiff made such a reference when he stated in the presence of the jury, "They have got a claim over an agreement to get back every cent they have to give out in this lawsuit." We must depend on the discretion of the trial judge in assessing the effect of this statement. We will not reverse his finding absent a clear showing of an abuse of this discretion. Taylor v. Brownell-O'Hear Pontiac Co., 265 Ala. 468, 91 So.2d 828 (1956). The rule recently laid down in Jawadv. Granade, 497 So.2d 471 (Ala. 1986), is inapposite. That case dealt only with the standard of appellate review when the granting or denying of a motion for new trial is based on the weight and preponderance of the evidence.
We cannot conclude that the trial court abused its discretion in ordering a new trial. The order is therefore affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON, BEATTY and HOUSTON, JJ., concur.