**INDUSTRIAL CHEMICAL & FIBER-GLASS CORP., a corporation, Plaintiff–Cross Claim–Plaintiff–Appellant,**

**Hartford Accident & Indemnity Company, Plaintiff–Joinder–Counterclaim–Defendant–Appellant,**

**Mission Insurance Company, Plaintiff–Intervenor & Cross Claim–Appellee,**

v.

**The NORTH RIVER INSURANCE COMPANY, National Union Fire Insurance Company of Pittsburgh, Pa., Defendants–Counterclaim Plaintiffs–Cross–Claim Defendants–Appellees,**

**Centennial Insurance Company, Counter Claim–Defendant–Appellee.**

**No. 89–7158.**

United States Court of Appeals, Eleventh Circuit.

Aug. 9, 1990.

Hobart A. McWhorter, Jr., Bradley, Arant, Rose and White, Donald M. James, Stewart M. Cox, Birmingham, Ala., for Ind. Chem. & Fiberglass Corp.

Deborah Alley Smith, Rives & Peterson, Norma Mungenast Lemley, Edgar M. Elliott, III, Clarence M. Small, Jr., Birmingham, Ala., for Centennial Ins.

Larry B. Childs, Cabanise, Johnston, Gardner, Dumas & O'Neal, Steve Alan Tucker, Birmingham, Ala., for Hartford Acc. & Indem. Co.

W. Stancil Starnes, Starnes & Atchison, Birmingham, Ala., for North River Ins. Co., et al.

Richard F. Ogle, Schoel, Ogle, Benton, Gentle & Centeno, Douglas J. Centeno, Birmingham, Ala., for Mission Ins. Co.

Before CLARK and EDMONDSON, Circuit Judges, and RUBIN*, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

In 1980, two workers were burned to death while repairing a fiberglass storage tank when a bucket of methyl ethyl ketone peroxide ("MEKP") ignited. The estates of the workers, Chandler and Ensley, brought tort actions in state court against Reichhold Chemicals Inc. ("Reichhold") which manufactures MEKP, Industrial Chemical & Fiberglass Corporation ("Industrial Chemical") which distributes MEKP, and others who are not parties to this action. Reichhold and others settled for $2.25 million. Industrial Chemical was not a party to this settlement because its primary insurer, Centennial Insurance Company ("Centennial"), refused to authorize

* Honorable Alvin B. Rubin, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designa-tion.

enough funds to make a credible settlement offer.

The state court actions went to trial against Industrial Chemical and Nova Industrial Group, with plaintiffs alleging that Industrial Chemical's negligent failure to warn wrongfully caused the deaths of Chandler and Ensley and that Industrial Chemical had breached its implied warranty of merchantability on MEKP. The jury returned a verdict of $7.25 million against Industrial Chemical; the verdict was reduced by the amount of the settlement to $5 million.[1]

After Centennial tendered its $500,000 policy limit, and Industrial Chemical's excess liability carrier, Mission Insurance Company ("Mission"), tendered its $1 million policy limit, Industrial Chemical was left with a $3.5 million excess judgment. With the state court plaintiffs attempting to levy its assets, Industrial Chemical sought protection in the federal courts in an attempt to get one or several insurance companies to indemnify Industrial Chemical for the excess judgment.

In its first federal action—filed before the state court actions went to trial but decided after entry of the state verdicts—Industrial Chemical sought a declaration that Hartford Accident and Indemnity Company ("Hartford"), Reichhold's primary insurer, was obligated under a broad-form vendor's endorsement to defend and to indemnify Industrial Chemical. The district judge certified to the Alabama Supreme Court the issue of coverage under such a broad-form vendor's endorsement. After a ruling by the Alabama Supreme Court favorable to Industrial Chemical, the judge entered an order holding Hartford liable for "the full amount of [the state] judgment or settlement, even if it exceeds the policy limits" and found that Hartford had acted in bad faith in denying coverage under the vendor's endorsement. *Industrial Chem. and Fiberglass Corp. v. Hartford Accident and Indemn. Co.*, CV-83-G-2875-S (N.D.Ala. Dec. 22, 1986).

Faced with this judgment in federal court, Hartford agreed to protect and to indemnify Industrial Chemical against the underlying state court judgments and to assume the defense in appealing these judgments. In return, Industrial Chemical assigned to Hartford the rights it might have against three other insurers—Centennial, Mission, and The North River Insurance Company ("North River"), an excess liability carrier for Reichhold. Hartford and Industrial Chemical petitioned the district judge to vacate his order and to enter an order reflecting their settlement. In the revised order, the court found that Industrial Chemical was an additional insured under the Hartford policy—but expressly deleted the finding that Hartford had acted in bad faith and was obligated to pay the whole state court judgment.

In this second federal action, Industrial Chemical, Centennial, and Mission sued North River, claiming that North River had breached its insurance contract with Reichhold to provide excess coverage. Industrial Chemical and Mission cross-claimed, and North River counterclaimed, against Centennial, asserting that Centennial negligently or in bad faith failed to settle the underlying state court actions. Hartford was joined as an involuntary plaintiff. (See attached Appendix for the interests and alignment of the parties.)

The district judge ruled that (1) North River did not breach its contract with Reichhold because Industrial Chemical was not covered under the terms of the North River policy; (2) Centennial had negligently failed to settle the underlying state court actions on behalf of Industrial Chemical; (3) Mission, as subrogee of Industrial Chemical, could recover the $1 million plus prejudgment interest it had paid to the state court plaintiffs; and (4) Industrial Chemical (in the light of Hartford's agreement to indemnify Industrial Chemical for all losses) would recover nothing because it had suffered no injury as a result of Centennial's negligence. Industrial Chemical and Hartford appeal the first and fourth rulings.

1. The jury returned a verdict in favor of Nova Industrial Group, exonerating it of liability.

The district court in this case erred when it concluded that Industrial Chemical was not covered under the terms of the North River policy. It also misapplied controlling Alabama law in determining that the indemnity agreement between Hartford and Industrial Chemical extinguished the damage Industrial Chemical suffered from Centennial's negligence.[2]

### Breach of Contract Claim

Reichhold has a $1 million primary-liability policy with Hartford and a $45 million excess-liability policy with North River. The Hartford policy contains a vendor's endorsement. The purpose of a vendor's endorsement—as demonstrated by extensive correspondence between Reichhold and its vendors—is to assure vendors of Reichhold products that Reichhold will insure them against liability arising out of distribution of the products.

North River says it has no obligation under its insurance contract with Reichhold to indemnify Industrial Chemical. But we conclude that Industrial Chemical is an insured under the North River policy. While Reichhold is the named insured under the North River policy, the policy also provides coverage to "any additional Insured ... included in the Underlying Insurances, subject to the provisions in Condition B". An attached schedule of underlying insurances lists the Hartford Comprehensive General Liability policy. The Hartford policy contains a provision which by its terms makes the "the insurance [applicable] to *all vendors* of [Reichhold] products"; this would include Industrial Chemical.

North River does not dispute that the Hartford policy is an underlying insurance or that Industrial Chemical is an additional insured under Hartford's policy with Reich-

hold. Instead, North River argues that (1) the North River policy was never intended to provide excess coverage to vendors of Reichhold products, and (2) if coverage were intended, Industrial Chemical never gave North River notice that Industrial Chemical was an additional insured under the Hartford policy pursuant to Condition B of the North River policy. We reject these arguments.

Under controlling New York law,[3] restrictions on the extent of coverage cannot be implied; exclusions or limitations must be specific to be enforced. *Nipkow & Kobelt, Inc., Parliament Textile Div. v. North River Ins. Co.*, 633 F.Supp. 437, 439 (S.D.N.Y.1986); *Utica Mut. Ins. Co. v. Prudential Property & Casualty Ins. Co.*, 103 A.D.2d 60, 63, 477 N.Y.S.2d 657, 660 (App.Div.1984) ("restriction on ... coverage ... cannot exist in the absence of clear and explicit language limiting coverage to the named insured"), *aff'd*, 64 N.Y.2d 1049, 489 N.Y.S.2d 704, 478 N.E.2d 1305 (1985). The exclusionary language must be "clear and unmistakable." *Nipkow*, 633 F.Supp. at 439. "[I]f doubt exists as to the person or persons covered by an insurance agreement, 'the language of the policy must be construed in the inclusive sense for the benefit of the insured'". *Old Republic Ins. Co. v. Concast, Inc.*, 588 F.Supp. 616 (S.D.N.Y.1984).

North River argues that excess coverage is reserved exclusively for the manufacturer, but nothing in the language of the North River policy supports this conclusion. If North River wished to exclude coverage for vendors it could have done so in plain language. Instead, the agreement clearly contemplates provision of coverage to additional insureds under the underlying insurances, subject to the provisions in

**2.** Centennial does not appeal the court's ruling that Centennial's negligent failure to settle the underlying state courts actions caused Industrial Chemical to suffer a judgment in excess of the Centennial policy limit.

**3.** Because the North River policy contains no choice of law provision, we must look to the choice of law rules of the forum state, Alabama, to determine the applicable law. *Frank Briscoe Co., Inc. v. Georgia Sprinkler Co., Inc.*, 713 F.2d

1500, 1503 (11th Cir.1983). Alabama's choice of law rule provides that the law of the state wherein the contract was executed shall govern interpretation of the contract. *Pines v. Warnaco, Inc.*, 706 F.2d 1173, 1176 n. 3 (11th Cir.1983). The last act necessary to the execution of the North River policies, the receipt and acceptance of the policies by the named insured, took place in New York.

Condition B. Vendors of Reichhold products are additional insureds under the Hartford policy and have been since the inception of the North River policy; so, they are insureds under the North River policy. Therefore, Industrial Chemical as a long-time vendor of Reichhold products is an insured under the North River policy.

■ Where the express language is clear, we need not look at parol evidence to determine the subjective intent of the parties. "An insurance contract is to be construed to give effect to the intention of the parties as expressed by the language used." *Insurance Co. of North America v. U.S. Fire Ins. Co.*, 67 Misc.2d 7, 322 N.Y.S.2d 520, 523 (Sup.Ct.1971), *aff'd*, 42 A.D.2d 1056, 348 N.Y.S.2d 122 (App.Div. 1973); *accord Cook v. City of Geneva*, 127 Misc.2d 261, 485 N.Y.S.2d 497, 500 (Sup.Ct. 1985). "What the parties intended and what they may now say they intended as to the meaning of the words contained in the policy can only be determined to the extent that such intention is evidenced by what is written in the policy itself." *Connors v. Mutual Benefit Health & Accident Ass'n*, 49 Misc.2d 776, 268 N.Y.S.2d 154, 159 (Cty. Ct.1966), *aff'd*, 27 A.D.2d 704, 279 N.Y.S.2d 1020 (App.Div.1967); *Sperling v. Great American Indemnity Co.*, 7 N.Y.2d 442, 450, 199 N.Y.S.2d 465, 472, 166 N.E.2d 482, 487 (1960).

Condition B provides that "[i]n the event of additional Insureds being added to coverage" under the Hartford policy "during the currency" of the North River policy, "prompt notice shall be given to [North River]". Industrial Chemical was not "added" as an additional insured during the term of the North River policy; as a Reich-

hold vendor since 1964, Industrial Chemical was already an additional insured at the inception of the North River policy.[4]

■ Nothing in the policy requires specific notice of the identity of each additional insured in the underlying insurances. It is unnecessary for a person to be described by name to be an insured under a policy, if his identity can be determined from the description in the policy. *Providence Washington Ins. Co. v. Stanley*, 403 F.2d 844, 849 (5th Cir.1968)[5] (" 'It is sufficient if his identity as an insured can be ascertained by applying the description contained in the policy'.") (quoting 4 J. Appleman, Insurance § 2341, p. 51 (Supp. 1968)). *See, e.g., Otsego Mutual Fire Ins. Co. v. Darby*, 79 Misc.2d 80, 358 N.Y.S.2d 314, 320 (Sup.Ct.1974) (son is additional insured under parents' homeowner's policy "by reason of the fact that he [falls] within one of the general categories of insured persons" included in policy); *Lynton v. Metcalf*, 68 Misc.2d 779, 327 N.Y.S.2d 823 (Civ.Ct.N.Y.1971) (passenger in taxicab is additional insured under taxi-driver's insurance policy). The notice requirement is met by notice of additional categories or groups of insureds; in this case, notice that vendors of Reichhold's products were additional insureds under the broad-form vendor's endorsement is enough.

North River's course of performance supports this construction of Condition B because North River never asked for a list of the names of the vendors covered under the Hartford policy, even at the beginning of the North River–Reichhold relationship in 1979. Condition B requires that North River be notified; it does not require notice from the additional insureds themselves.

---

**4.** We reject the idea that the annual renewal of Hartford's policy with Reichhold during the three-year term of the North River policy meant that "additional insureds" had been added, requiring new notice each year of the identities of each vendor of Reichhold products. The Hartford policies from 1977 through 1983 were substantially identical. Each policy contained a vendor's endorsement (applicable to all vendors of Reichhold products). The existence of this clause was disclosed annually to North River.

Still, even if new notice were required with each policy renewal, the receipt by North River

of the renewed Hartford policy with its vendor's endorsement would satisfy Condition B; notifying North River that vendors of Reichhold products had been added as additional insureds on the underlying insurances was enough.

**5.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

### Negligent Failure to Settle Claim

■ The district court found that Centennial's "negligent failure to settle proximately caused the resulting excess verdict." Under this theory, the court also found that Mission, as subrogee of Industrial Chemical, was entitled to recover from Centennial the $1 million it paid to the state court plaintiffs. These findings were not appealed. The court, however, found that Industrial Chemical was unentitled to recover from Centennial because—considering the indemnity agreement between Industrial Chemical and Hartford—Industrial Chemical could suffer no loss. We disagree. We find that Industrial Chemical suffered a compensable loss under Alabama law for which it is entitled to compensation by Centennial.

The indemnity agreement in question was entered into by Industrial Chemical and Hartford in settlement of Industrial Chemical's declaratory judgment action— several months after entry of judgment in the state court actions. The agreement provided that: (1) Hartford would post supersedeas bonds for the state court judgments; (2) Hartford would pay the costs of appealing the case to the Alabama Supreme Court; (3) Hartford would protect Industrial Chemical from the ultimate judgments after appeal; and (4) Industrial Chemical, with Hartford paying counsel, would pursue claims against Centennial for negligent failure to settle and against North River for breach of contract.

Even before the indemnity agreement was executed, Centennial and Mission had paid to the extent of their policy limits, leaving Industrial Chemical to raise $3.5 million from its corporate assets. The Chandler/Ensley plaintiffs were in the process of discovering Industrial Chemical's assets, taking the deposition of Industrial Chemical's treasurer, and were about to attach the company's accounts receivables and inventory. Industrial Chemical was on the verge of filing for bankruptcy protection. Centennial obtained a temporary stay of execution pending resolution of post-trial motions but posted no supersedeas bond to protect Industrial Chemical's assets from attachment pending appeal. With Hartford agreeing to assume the defense of Industrial Chemical, Centennial tendered the defense in the state court actions to Hartford and withdrew entirely from the case.

The district court cited no authority for its proposition that an indemnification agreement by one insurance company extinguishes a tort claim against a second insurance company for negligent failure to settle. The district court's reliance on *Skipper v. South Central Bell Telephone Co.,* 334 So.2d 863, 865 (Ala.1976), and *Alabama Power Co. v. Guy,* 281 Ala. 583, 206 So.2d 594, 599 (1967), is misplaced. In *Skipper,* the court held that compensatory damages may be awarded in cases where actual injury or harm is shown even though no measurable losses can be proved. 334 So.2d at 866. While *Alabama Power* recites black letter law that damages are part of a prima facie tort claim, it has no bearing on this case because the *Alabama Power* court found that damages existed. 206 So.2d at 599, 604. None of the cases relied on by the district court held that a corporation, faced with an excess verdict proximately caused by the negligent failure of its primary insurance carrier to settle, is divested of its claim because another insurance company later agrees to indemnify the corporation.

■ Industrial Chemical suffered a compensable loss under Alabama law when the jury returned a verdict in excess of the Centennial policy limit. Liability on the judgment, not payment of the judgment, creates the right of action against an insurer who wrongfully failed to settle. *See Alabama Farm Bureau Mut. Casualty Ins. Co. v. Smelley,* 295 Ala. 346, 329 So.2d 544, 546 (1976); *Alabama Farm Bureau Mut. Casualty Ins. Co. v. Dalrymple,* 270 Ala. 119, 116 So.2d 924, 925–26 (1959); *Alabama Power Co. v. Edwards,* 219 Ala. 162, 121 So. 543, 545 (1929); *Roland v. Krazy Glue, Inc.,* 342 So.2d 383, 385–86 (Ala.Civ. App.1977). Industrial Chemical's overlapping coverage from Hartford and subsequent negotiation of an indemnification agreement does not undermine Industrial

Chemical's claim to injury from the actions of Centennial.

 Industrial Chemical became liable on the full excess judgment when Centennial and Mission tendered the limits under their policies and allowed Hartford to take over representation of Industrial Chemical on the state appeal.[6] Where the insurer withdraws from defending the insured, the insurer cannot plead the continuation of the appellate process, at a third party's expense, as a defense to its own liability. We are aware of no authority that holds that an insured must exhaust his appellate remedies (at his own or a third party's expense) before he has a claim against an insurer for failure to settle.

The indemnity agreement with Hartford expressly preserved and was contingent on the right of Industrial Chemical to proceed against Centennial and North River. This agreement was not a payment, but merely a promise to protect Industrial Chemical. At the time the record was closed and the district court entered its opinion in this case, Hartford had paid nothing either to Industrial Chemical or to the Chandler/Ensley plaintiffs. The indemnification agreement operated like a loan-receipt agreement.

A loan-receipt agreement is frequently used in a situation "where an insured suffers a loss against which he is insured and for which he has a claim against a third party."[7] *Oliver B. Cannon & Son, Inc. v. Fidelity & Casualty Co. of N.Y.*, 519 F.Supp. 668, 676–77 (D.Del.1981). The insurer loans the insured the amount of the loss. The insured agrees to "repay the loan only in the event and to the extent that it recovers damages for the loss from a third party." *Id.* at 677. The insured also agrees "to initiate suit in its own name against the third party and the suit is re-

quired to be maintained 'at the expense of and under the exclusive direction and control of' the insurer." *Id.*

 Use of a loan-receipt agreement does not extinguish the insured's loss. *Oliver B. Cannon*, 519 F.Supp. at 677. "When a loan receipt is utilized ... the insured retains a sufficient interest so as not to displace him as the real party in interest...." *Frank Briscoe Co.*, 713 F.2d at 1502 n. 1; *See also Ketona Chem. Corp. v. Globe Indemn. Co.*, 404 F.2d 181, 183–84 (5th Cir.1968); *Sanders v. Liberty Mut. Ins. Co.*, 354 F.2d 777, 778 (5th Cir.1965); *Industrial Dev. Bd. of City of Prattville v. Brown & Root, Inc.*, 99 F.R.D. 58 (M.D. Ala.1983). Where a loan-receipt agreement is used, the insured remains the real party in interest and has the right to prosecute the action against the nonpaying insurer. The existence of the Hartford indemnity agreement, no less than a loan-receipt agreement, preserved the role of Industrial Chemical as the real party in interest. We have expressly rejected "no loss" arguments like that advanced by Centennial and accepted by the district court. *See Frank Briscoe Co.*, 713 F.2d at 1502 n. 1; *Ketona Chem. Corp.*, 404 F.2d at 183–84.

 To the extent the indemnity agreement is considered a payment, it is a third-party payment. Under the Alabama collateral source rule, payments to a plaintiff from third parties will not be considered in reduction of the plaintiff's damages, even if the payments are made to cover the very losses that are the basis of the plaintiff's claim. *Carlisle v. Miller*, 275 Ala. 440, 155 So.2d 689, 691 (1963); *Southeast Ala. Gas Dist. v. Taylor*, 416 So.2d 1050, 1052 (Ala.Civ.App.1982). Indemnification agreements, like insurance agreements, come under the collateral

---

**6.** We reject Centennial's claim that a cause of action for negligent failure to settle does not accrue until appellate review of the judgment imposing liability is exhausted. *Romano v. American Casualty Co. of Reading, Pennsylvania*, 834 F.2d 968, 969–70 (11th Cir.1987) (interpreting Florida law), is distinguishable from the present case because Centennial abandoned all effort to reduce the size of the excess judgment when it tendered its defense to Hartford. *See,*

*e.g., Roldan v. Allstate Ins. Co.*, 149 A.D.2d 20, 544 N.Y.S.2d 359, 363–64 (App.Div.1989) (insurer allowed default judgment to be entered against insured).

**7.** Loan-receipt agreements have been approved by the Supreme Court. *See Luckenbach v. W.J. McCahan Sugar Refining Co.*, 248 U.S. 139, 148–49, 39 S.Ct. 53, 55, 63 L.Ed. 170, 175–76 (1918).

source rule. *See Taylor v. Mason,* 390 So.2d 1046, 1048 (Ala.1980); *Robins Eng'g, Inc. v. Cockrell,* 354 So.2d 1, 2–3 (Ala. 1977); *Coffee v. Seaboard Sys. R.R., Inc.,* 507 So.2d 476, 478 (Ala.1987). Collateral arrangements to pay for a loss do not extinguish or reduce the loss, regardless of how certain it would appear the collateral benefits may be. *Ensor v. Wilson,* 519 So.2d 1244, 1266–67 (Ala.1988); *Jones v. Crawford,* 361 So.2d 518, 522 (Ala.1978); *Gribble v. Cox,* 349 So.2d 1141, 1142–43 (Ala.1977).

■ Centennial argues that the loan-receipt cases are not pertinent because Hartford caused the loss covered by the indemnity agreement and entered into the agreement to settle its own tort liability. That the indemnity agreement arose out of a settlement between Industrial Chemical and Hartford about Hartford's disputed insurance coverage makes no difference. *See, e.g., Robert E. Owen & Assocs. v. Gyongyosi,* 433 So.2d 1023, 1025 (Fla. 4 DCA 1983) (collateral source rule applies to settlement proceeds); *Rocco v. Johns–Manville Corp.,* 754 F.2d 110, 114–15 (3d Cir.1985) (same) (applying Pennsylvania law). If a tortfeasor negligently damages A's automobile, and later A and A's insurer dispute whether A's loss is covered by insurance, the settlement of the dispute between A and A's insurer does nothing to lessen the original tortfeasor's liability to A.

Here, Centennial was the cause of the excess judgment, that is, the original tortfeasor. Centennial had the right to select counsel and the exclusive right to make decisions to settle. The district court found that Centennial's negligent failure to settle proximately caused the resulting excess verdicts.

■ Centennial also argues that the collateral source rule is inapplicable between joint tortfeasors and that Hartford and Centennial are joint tortfeasors here. We doubt that Hartford and Centennial are joint tortfeasors, but we do not address that question. The contention was raised for the first time on appeal. *See, e.g., Menendez v. Perishable Distribs., Inc.,* 763 F.2d 1374, 1378 (11th Cir.1985) (failure to raise defense constitutes waiver); *Adams v. Askew,* 511 F.2d 700, 705 & n. 9 (5th Cir.1975) (court of appeals will not consider issues raised for the first time on appeal); *Hardman v. Freeman,* 337 So.2d 325, 326 (Ala.1976) ("[joint] defendant who is put to trial is not entitled to post-judgment relief if he did not raise the defense of pro tanto settlement [of joint tortfeasor] at his first opportunity").

### Relief

We reverse and remand the case for a determination and apportionment of damages. We hold that Centennial is liable to Industrial Chemical for its negligent failure to settle. We also hold that North River is liable, to the extent of its policy limits, for its failure to indemnify Industrial Chemical pursuant to its insurance policy.

VACATED and REMANDED.

APPENDIX: PARTIES AND COVERAGE

Industrial Chemical & Fiberglass Corp.
-- Distributes methyl ethyl ketone peroxide ("MEKP").
-- Sued by Chandler and Ensley in Alabama state court for failure to provide warnings and material data sheets on the use and dangerous propensities of MEKP.
-- Insured by Centennial (primary) and Mission (excess).
-- Not invited to participate in pre-trial settlement negotiations or settlement.
-- Sued Hartford for declaration that vendor endorsement in Reichhold's policy with Hartford obligates Hartford to defend and indemnify.
-- Sued Centennial for negligent failure to settle the Chandler/Ensley cases after entry of $5 million verdict against Industrial Chemical.

Centennial Insurance Co.
-- Primary insurance carrier for Industrial Chemical with $500,000 policy limit.
-- Tried to pass on the costs of defense and settlement to Hartford.
-- Took Chandler/Ensley cases to trial and lost a $7.25 million verdict, for which Industrial Chemical was responsible for paying $5 million.
-- After verdict, Centennial tendered the $500,000 policy limit.

Mission Insurance Co.
-- Excess liability carrier for Industrial Chemical with $1 million policy limit, payable when Centennial limit is exhausted.
-- After Chandler/Ensley verdict, Mission tendered its $1 million limit and then joined action against Centennial for negligent failure to settle.

Reichhold Chemicals, Inc. ("Reichhold")
-- Manufactures MEKP.
-- Sued by Chandler and Ensley on products liability grounds for manufacture of MEKP, a highly volatile chemical.
-- Insured by Hartford (primary) and North River (excess).
-- Joined in $2.25 million pro tanto settlement with Pennsylvania Engineering Corp., Pennsylvania Engineering Construction Co., and Warner Fiberglass Products, Inc. Reichhold contributed $843,700. Hartford did not participate in the settlement negotiations.
-- Chandler/Ensley plaintiffs sued Industrial Chemical for its own independent negligence.

Hartford Accident and Indemnity Co.
-- Primary insurance carrier for Reichhold with $1 million policy limit.
-- Policy contained a vendor's endorsement providing coverage to vendors of Reichhold products.
-- In settlement of a declaratory judgment suit brought by Industrial Chemical, Hartford agreed to indemnify Industrial Chemical against Chandler/Ensley suits.

The North River Insurance Co.
-- Excess liability carrier for Reichhold with $5 million per incident limit and umbrella coverage up to $40 million.
-- Counterclaimed Centennial for negligent failure to settle.
-- Action brought against Hartford for failure to defend dismissed as untimely.